## BOARD OF EDUCATION OF SALT LAKE CITY v. HANCHETT et al.

No. 3130.   Decided August 28, 1917.   (167 Pac. 686.)

SCHOOLS AND SCHOOL DISTRICTS—PUBLIC SCHOOLS—TAXATION—ASSESS-
MENT—"AND." Comp. Laws 1907, section 1936, as amended by Laws
1915, c. 115, provides for taxes for school purposes based on state-
ment and estimate of the boards of education, and that the tax for
schools in cities of the first class shall not exceed 6½ mills on the
dollar on any taxable property per annum, and shall not exceed 2½
mills additional in any year for the purchase of school sites and
erection of school buildings. The section was also amended by
chapter 111, approved on the same day, which declares that the tax
for the support of schools and the purchase of school sites and
erection of school buildings in cities of the first class and in cities
of the second class, having an assessed valuation of $20,000,000 or
more, shall not exceed in any one year 3½ mills on the dollar on any
taxable property. *Held*, that while punctuation may be disregarded
for the purpose of ascertaining legislative intent, yet as the word
"and" is a conjunction implying addition, the conjunction in chapter
111 cannot be disregarded so that the limitation on assessed valuation"
will be construed as applicable only to cities of the second class, but
it must be taken as applicable to a city of the first class, and hence
the section is unconstitutional as to such cities and the limitation
prescribed does not apply.[1]

Original application by the Board of Education of Salt
Lake City for a writ of mandamus against Lafayette Hanchett
and others, commissioners of Salt Lake County, and others.

WRIT ISSUED.

*Cheney, Jensen & Holman* for plaintiff.

*Richard Hartley, Co. Atty.,* and *R. B. Porter, Asst. Co.
Atty.,* for defendants.

FRICK, C. J.

The board of education of Salt Lake City, hereinafter called
plaintiff, filed its application in this court praying for an
alternative writ of mandate against Lafayette Hanchett,

---

[1] *Board of Education* v. *Hunter*, 48 Utah, 373, 159 Pac. 1019.

Charles F. Stillman, and Joseph Lindsay, constituting the board of county commissioners of Salt Lake County, and against Thomas Homer, clerk, A. H. Parsons, assessor, Raymond C. Naylor, treasurer, and M. C. Iverson, auditor of Salt Lake County, hereinafter styled defendants, to require them to levy the taxes according to the statement and estimate made by the plaintiff for the support and maintenance of the schools of Salt Lake City for the year 1917, as provided by Comp. Laws 1907, section 1936, as amended by chapter 115, Laws Utah 1915, p. 210, or to show cause why they do not do so. An alternative writ was duly issued to which the defendants appeared and filed a general demurrer, which was ably argued by respective counsel, and the case has been submitted on said demurrer. The statute last above referred to reads as follows:

"The board of education shall, on or before the first day of May of each year, prepare a statement and estimate of the amount necessary for the support and maintenance of the schools under its charge for the school year commencing on the 1st day of July next thereafter; also the amount necessary to pay the interest accruing during such year, and not included in any prior estimate, on bonds issued by said board; also the amount of sinking fund necessary to be collected during such year for the payment and redemption of said bonds; and shall forthwith cause the same to be certified by the president and clerk of said board to the officers charged with the assessment and collection of taxes for general county purposes in the county in which the city is situated, and such officers, after having extended the valuation of property on the assessment rolls, shall levy such per cent. as shall, as nearly as may be, raise the amount required by the board, which levy shall be uniform on all property within the said city as returned on the assessment roll; and the said county officers are hereby authorized and required to place the same on the tax roll. Said taxes shall be collected [by the county treasurer as other taxes are collected], but without additional compensation for assessing and collecting, and he shall pay to the treasurer of said board, promptly as collected

who shall hold the same subject to the order of the board of education; provided, that the tax for the support and maintenance of such school [s] in cities of the first class shall not exceed in any one year six and one-half mills on the dollar upon all taxable property of said city, [and shall not exceed] two and one-half mills additional on the dollar in one year, to be used exclusively for the purchase of school sites and the erection of school buildings; and in cities of the second class, the tax for the support and maintenance of such schools shall not exceed in any one year ten [twelve] mills on the dollar upon all taxable property in said city.''

The section just quoted was, however, also amended by chapter 111, Laws Utah 1915, both of which were approved on the same day. The material part of the amendment last referred to, and the only part that is in question here, reads as follows:

''Provided, that the tax for support and maintenance of such schools, and for the purchase of school sites and for the erection of school buildings in cities of the first class and in cities of the second class, *having an assessment valuation of twenty million dollars or more,* shall not exceed in any one year three and one-half mills on the dollar upon all taxable property of said city; and in cities of the second class, having an assessed valuation of less than twenty million dollars, the tax for the support and maintenance of such schools, and for the purchase of school sites, and the erection of school buildings shall not exceed in any one year three and seven-tenths mills on the dollar upon all taxable property of said city.''

We remark, this is a companion to the case of *Board of Education* v. *Hunter,* 48 Utah, 373, 159 Pac. 1019, where we ordered a peremptory writ of mandate against the county officers of Weber County under precisely the same circumstances, except that in that case the schools of Ogden City, which is a city of the second class, were involved, while in this case the schools of Salt Lake City, a city of the first class, are involved. In the Hunter Case we have stated the facts on which the writ was based, and have there set forth at

large our reasons for granting the same, which reasons we shall not repeat in this opinion.

It is conceded by the defendants that in this case the schools of Salt Lake City are affected by the 3½ mills limitation precisely as the schools of Ogden City were affected by the limitation provided for in the proviso we have set forth above. In other words, it is conceded that the schools of Salt Lake City cannot be maintained and kept open for a period of nine months, and that said city will be prevented from participating in the "high school fund" referred to in the Hunter Case, supra, if the 3½ mills limitation is enforced as defendants threaten to and will do if not prevented. In the Hunter Case we held that, for reasons there stated, the 3½ mills levy, as limited in the proviso we have quoted above, was unconstitutional and void, and hence not enforceable. While the defendants concede that the Hunter Case was correctly decided, and that it was properly held in that case that the limitation of the 3½ mills was void, yet they contend that the phrase we have put in italics does not apply to cities of the first class, but is limited to cities of the second class, like Ogden City. It is contended that the words in italics refer to cities of the second class only, and hence there is no limitation respecting the "assessed valuation" in cities of the first class, but the only limitation respecting cities of that class is the 3½ mills mentioned in the proviso. We cannot so interpret the proviso. We cannot see how, under any rule or canon of construction, cities of the first class can be excluded from the phrase we have put in italics and at the same time how those cities can be included in the limitation of the 3½ mills mentioned in the proviso. Counsel for defendants ingeniously argues that if the punctuation be changed by placing the comma after the word "class" following the word "first" instead of where it is after the words "second class," such a result follows. In that connection counsel also argues that punctuation is no part of a statute and may be disregarded. No doubt punctuation may not be permitted to affect or to defeat the legislative intention or to make that obscure which otherwise would be

clear. Courts, in order to enforce the real intent of legislative enactments, very frequently not only change the punctuation, but, if necessary, will ignore it altogether. Punctuation may, however, be resorted to as an aid in ascertaining the legislative intent, and where such is the case courts may not, and do not, arbitrarily ignore punctuation, but will give it due consideration and effect. If the punctuation in the proviso as it now is were entirely eliminated, however, the meaning of the italicized phrase would still be precisely what it is with the punctuation as it stands. Defendants' counsel, however, suggests that the comma after the words "second class" should be advanced and should be placed after the words "first class," so that the punctuation would be: "In cities of the first class, and in cities of the second class having an assessed valuation of twenty million dollars or more," etc. In our opinion if the punctuation were thus changed the phrase we have just quoted would just as clearly include cities of the first class as it is now clear that they are included. As we view it, under any rule of construction, as the language now stands, the $20,000,000 valuation applies to the cities of the first class just as clearly as it does to cities of the second class; and, further, if it be held that the $20,000,000 valuation does not apply to cities of the first class, then it must also be held that the 3½ mills limitation applies only to cities of the second class and not to cities of the first class. If the latter should be held to be the meaning of the phrase, then the schools in the cities of the first class would not be affected, since a sufficient levy can be made under another limitation which would then apply. We are, however, forced to the conclusion that both the $20,000,000 limitation and the 3½ mills limitation were intended to, and do, apply to cities of the first class as well as to cities of the second class, to which it was held in the Hunter Case, supra, they applied.

Let us pause a moment and see what is meant by the word "and" following the words "first class." "And" is there used in the sense of addition. That is, adding something to what has just been written. "And" is used in the same sense as it is used in the sentence, "5 and 7 are 12." That is,

when 7 units are added to 5 units the two produce the result, 12. Cities of the second class are therefore added to cities of the first class, and both, when taken together, come within the limitation of $20,000,000 valuation and likewise come within the limitation of the 3½ mills levy. The cities of the first class having a valuation of $20,000,000 or more, and all the cities of the second class having a like valuation, therefore, constitute one class which is affected by the 3½ mills limitation, while all other cities of the second class having a lower valuation constitute the class which is affected by the 3.7 mills levy. Had it been intended to prevent the above limitation from applying to cities of the first class, it could easily have been done by using apt language. As the language now stands, to our minds there is no escape from the conclusion that the limit applies to cities of the first class precisely as it was held in the Hunter Case that it applied to cities of the second class.

Counsel for defendants concedes that if that shall be our conclusion, then the result in this case must be the same as it was in the Hunter Case. Counsel for plaintiff have, however, presented a very forcible argument that the limitation is unconstitutional and void for other reasons. While the argument presented upon that phase of the case is very interesting, to say. the least, yet, in view of the conclusion reached, it is not necessary for us at this time to pursue the subject farther. We are all agreed that no other construction is permissible than the one we adopted in the Hunter Case and which we are again forced to adopt in this case.

From what has been said, therefore, it follows that the limitation of 3½ mills cannot be enforced as against Salt Lake City, which leaves in force the limitation found in Comp. Laws 1907, section 1936, as amended by chapter 115, Laws Utah 1915, which we have quoted in full. We remark that the words and phrases we have put in brackets are omitted from the section as it is printed in the laws of 1915, but they are included in the act as passed by the Legislature. We, therefore, have copied the section as it was adopted.

It follows, therefore, that the demurrer should be, and it accordingly is, overruled, and that a peremptory writ of mandate should issue as prayed for by plaintiff in its application. Such is the order.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.