486 P.2d 391

UTAH STATE ROAD COMMISSION and Division of State Lands of the State of Utah, Plaintiffs and Respondents,

v.

HARDY SALT COMPANY, a corporation, Defendant and Appellant.

No. 12217.

Supreme Court of Utah.

June 17, 1971.

J. Thomas Greene, of Cannon, Greene & Nebeker, Salt Lake City, for defendant-appellant.

Vernon B. Romney, Atty. Gen., Robert B. Hansen, Dallin W. Jensen, Richard L. Dewsnup, Asst. Attys. Gen., Clifford L. Ashton, Edward W. Clyde, Special Asst. Attys. Gen., Salt Lake City, for plaintiffs-respondents.

TUCKETT, Justice:

The Utah State Road Commission commenced these proceedings in eminent domain to acquire certain lands of the defendant for highway purposes. The State of Utah and the Hardy Salt Company claim ownership of 32.2 acres of "reliction lands" which are situate along the shore line of Great Salt Lake.

The trial court made findings in favor of the State and entered a judgment determining that the State was the owner of the lands in question. Hardy is here seeking a reversal of that judgment.

Hardy is the title owner of certain lands which it acquired by mesne conveyances from the original owners who claimed under patents issued by the United States. The 32.2 acres of land we are here concerned with lie between the lands owned by Hardy in fee and the waters of Great Salt Lake. The calls in the Hardy conveyances follow generally the meander line of the lake as surveyed by Captain Howard Stansbury in 1850. The Surveyor General of the United States sent Captain Stansbury to make a survey of the Great Salt Lake in the year 1850. The purpose of the survey was to establish a mean high-water mark which would segregate the bed of the lake from the public domain. The Stansbury Party met with some difficulty in making the survey, due to the fact that the lands surrounding the lake were saturated

with salt which prevented the growth of vegetation, and the gentle slope of the shore lands surrounding the lake made it difficult to discover marks caused by wave action or erosion. In 1856, the Stansbury Survey was accepted by the Surveyor General of the United States as establishing the meander line of the lake.

On January 4, 1896, when Utah was admitted to the Union, the elevation of the waters of Great Salt Lake above sea level was approximately the same as its elevation in 1850.

The original 13 states that formed the Union became the owners of the beds of all navigable waters as successors to the crown. The states thereafter admitted to the Union were admitted on an equal footing basis with equal rights and powers. Upon Utah's admission to the Union it received title to the beds of navigable lakes and rivers.[1]

The Great Salt Lake constitutes an irregularly shaped body of water which on January 4, 1896, was approximately 77 miles long and 32.5 miles wide, and lies in its entirety within the boundaries of this State. Several streams flow into the lake but it has no outlet. The depth of the lake varies from less than five feet to approximately 30 feet. The waters of the lake have a high salt content and substantial areas of saline lands surround the water. There have been wide fluctuations of the elevation of the lake since it was first surveyed in 1850. Before and after statehood the lake has been used by various types of boats, ranging from pleasure craft to cargo and ore-carrying vessels. While Hardy does not seriously contend that the Great Salt Lake is not navigable, nevertheless, at the commencement of these proceedings its navigability had not been judicially determined. The rule has been enunciated in a number of Federal cases that if a body of water is navigable in fact, it is navigable in law.[2] After the hearing in this case the United States Supreme Court handed down an opinion which held that Great Salt Lake was navigable at the time Utah was admitted to the Union.[3]

The claim of Hardy to the ownership of the lands here involved is based upon its claim as a riparian proprietor to the reliction lands which extend to the bottom or thread of the land.[4] Hardy's claim is to a

1. State Engineer v. Cowles Bros. Inc. (Nev.), 478 P.2d 159.

2. United States v. Utah, 283 U.S. 64, 76, 51 S.Ct. 438, 75 L.Ed. 844; Shively v. Bowlby, 152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331; United States v. Holt State Bank, 270 U.S. 49, 46 S.Ct. 197, 70 L.Ed. 465; The Daniel Ball, 77 U.S. (10 Wall) 557, 19 L.Ed. 999; State Engineer v. Cowles Bros. Inc., supra.

3. Utah v. United States, 403 U.S. 9, 91 S.Ct. 1775, 29 L.Ed.2d 279 (1971).

4. McGilvra v. Ross, 215 U.S. 70, 30 S.Ct. 27, 54 L.Ed. 95; County of St. Clair v. Lovingston, 23 Wall (90 U.S.) 46, 23 L.Ed. 59.

rectangular or pie-shaped tract of land extending from the shore line and whose area increases as the waters recede. Thus Hardy claims by reliction a portion of the bed of the lake which was below the meander line of the lake on the date Utah became a state. The land which is the subject of these proceedings is claimed by Hardy as relicted land and by the State as the owner of the bed of Great Salt Lake.

The State contends that the doctrine of reliction should not be applied to the lands surrounding Great Salt Lake. The doctrine of "reliction" in the law covers the situation involving the title to the land which emerges from beneath a body of water caused by a recession of the waters. The law of reliction is generally the same as that of accretion as it concerns contiguity, imperceptibility and naturalness of the process of the water's recession and the exposure of additional land. The law of reliction, as well as accretion, has evolved over a long period of time and is based upon the rights of a riparian owner to have access to the water adjacent to his property. The State bottoms its contention that the law of reliction should not be applied to Great Salt Lake because the water level of the lake fluctuates substantially and rapidly, rather than slowly and imperceptibly. The facts show, and the trial court found, that there have been rapid,

substantial, temporary and widely fluctuating variations in the level of the lake. As illustrative of this fluctuation, the level of the lake between September 1, 1966, to December 31, 1966, was lowered more than two vertical feet, exposing more than 140,000 acres of shore lands during that period. During a 92-day period in the year 1964 the water level rose approximately 1.75 feet which resulted in submerging 120,000 acres of shore land. One of the principal causes of the fluctuations in the water level is the diversion of the waters of the tributaries of the lake for irrigation and other consumptive uses. The lake being without an outlet is more susceptible to the effects of climatic changes; the level of the lake rises substantially during wet cycles, and there is a substantial lowering of the water level during dry cycles.

In view of the unique and special conditions affecting Great Salt Lake, we agree with the trial court that the recession of the waters from the land in question has not been natural, gradual and imperceptible,[5] and that the doctrine of reliction should not be applied.

We are in accord with the decision of the district court that Great Salt Lake is a navigable body of water, and that the ownership of the bed of the lake became vested

5. Martin v. Busch, 93 Fla. 535, 112 So. 274; Hillebrand v. Knapp, 65 S.D. 414, 274 N.W. 821, 5A Thompson on Real Property, Sec. 2563 (1957 Replacement).

in the State of Utah at the time of its admission to the Union, and that the State is entitled to have its title quieted as to the lands which are the subject matter of this suit.

The judgment of the court below is affirmed. No costs awarded.

CALLISTER, C. J., and ELLETT, HENRIOD and CROCKETT, JJ., concur.