486 P.2d 393

**STATE of Utah, Plaintiff and Respondent,**

v.

**Wallace DUNNIVAN, Defendant and Appellant.**

**No. 12355.**

Supreme Court of Utah.

June 23, 1971.

Lorin R. Blauer, Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, Chief Asst. Atty. Gen., Larry V. Lunt, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Defendant Wallace Dunnivan appeals from a conviction by jury of the crime of assault with a deadly weapon with intent to do bodily harm.[1] The gravamen of his attack upon the judgment is that the evidence does not support the verdict.

At the time of the crime, on October 3, 1970, the defendant and his former wife, Peggy Dunnivan, though divorced 16 months earlier, had been "more or less"

1. Sec. 76–7–6, Utah Code Annotated 1953.

living together since. On October 2, a car ostensibly owned by Peggy Dunnivan had been repossessed. This the defendant resented and blamed her. A violent argument ensued. It later subsided and they appeared to be reconciled. However, the next day the defendant came to the home again and broached what has been from time immemorial a very provocative subject: money. Another fracas developed. Its description by the parties and witnesses makes it seem like an almost entirely different occurrence, depending on whose version of the evidence is believed. In any event, it culminated in the defendant displaying a loaded sawed-off shotgun in such a manner as to result in his being charged with and convicted of this crime.

It is hardly surprising that in the cooled-off aftermath of such an occurrence, the account as given by the defendant would make his conduct seem not too unreasonable. His claim is that while the ex-wife was away, he found the gun in a dresser drawer; that this so greatly angered him because of the presence of small children in the house, that it was his intention to confront her about the matter when she returned. He projects the idea that she should have known better than to think he really intended to injure her with anything so harmless and inoffensive as a sawed-off shotgun which wasn't even cocked. Howsoever that may be, the jury's verdict indicates that they thought the truth lay in other aspects of the evidence.

In summary: the defendant had demanded money that his ex-wife was getting from a welfare check. She testified that he stated to her: "I want you to go down and get me a hundred dollars so that I can take my girl friend out and go drinking"; and that upon her protestation he went into a rage and threatened to kill her if she did not get him the money. She did not do so but called her father, Mr. George P. Davis. Shortly thereafter (15 or 20 minutes) she, her father and two policemen came to the house. The latter remained at hand where they could witness what was going on. Meanwhile, the defendant had loaded the shotgun and had it on the floor beside where he was sitting at a table. Defendant avers that as he saw Mr. Davis and Peggy enter the doorway he picked up the gun intending to confront her about it and show her father what a "stupid daughter he had with that shotgun."

In response to Mr. Davis's question about his threat to kill his daughter, defendant answered: "yes, and I will do it." As he reached for the gun Mr. Davis grabbed it and restrained him. Whereupon, the defendant was arrested and taken into custody. Although defendant says that the gun was not cocked and he did not have his finger upon the trigger at any

time, the ex-wife saw it the other way: that he did; and that she was frightened.

The contentions made by the defendant are answered in these basic rules: we assume that the jury believed those aspects of the testimony, and drew whatever reasonable inferences that could be derived therefrom, favorable to their verdict, and we therefore survey the evidence in that light.[2] Correlated thereto: whether there was in fact an assault is not necessarily to be determined upon what the defendant says [3] but rather upon what the jury may reasonably believe from the evidence.[4]

Upon our survey of the record in the light of the rules just stated, it is our opinion that there is a reasonable basis in the evidence for the jury's believing beyond a reasonable doubt that the defendant was guilty of the offense charged.

Affirmed. No costs awarded.

CALLISTER, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

2. See People v. Flummerfelt, 153 Cal.App. 2d 104, 313 P.2d 912: "On review, following a conviction in a criminal case, we must view the evidence in the light most favorable to the People and we must assume the existence of every fact which the trier of fact could have reasonably deducted from the evidence."

3. State v. Peterson, 22 Utah 2d 377, 453 P.2d 696, the fact that the defendant denied any intent to harm the victim, " * * * does not establish the fact, nor does it even necessarily raise suf-

ficient doubt to vitiate the conviction * * * it is the jury's privilege * * [of] * * * drawing of reasonable inferences from the conduct shown, which * * * they may well have regarded as speaking louder than the defendant's later defensive claims as to what his intentions were."

4. The facts in this case, the contentions made, and the law applicable thereto are all very similar to the case of State v. Sargent, 122 Utah 457, 251 P.2d 663.