2002 UT 8

**STATE of Utah, By and Through DIVISION OF FORESTRY, FIRE & STATE LANDS, Plaintiff and Appellant,**

v.

**TOOELE COUNTY, Utah; Six Mile Ranch Company; Craig S. Bleazard; Mark C. Bleazard; and John C. Bleazard, Defendants and Appellees.**

No. 20000493.

Supreme Court of Utah.

Jan. 18, 2002.

Rehearing Denied March 12, 2002.

Mark L. Shurtleff, Att'y Gen., Annina M. Mitchell, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Douglas J. Ahlstrom, Tooele, and George S. Young, Brent A. Bohman, Salt Lake City, for defendants.

RUSSON, Associate Chief Justice.

¶ 1 The State of Utah, by and through its Division of Forestry, Fire, and State Lands, appeals from a summary judgment order upholding Tooele County's vacation of its interests in a portion of West Stansbury Road near the Great Salt Lake. We reverse and remand.

## BACKGROUND

¶ 2 In March 1993, following repeated vandalism to their respective properties on Stansbury Island,[1] landowners Six Mile Ranch Company, Craig S. Bleazard, John C. Bleazard, and Mark C. Bleazard (collectively, "the Bleazards") petitioned Tooele County ("the County") to vacate its interests in the northern portion of the main access road to the area, West Stansbury Road. Subsequently, the County published notice of the Bleazards' petition to vacate West Stansbury Road in the local newspaper, the *Tooele Transcript–Bulletin.* This notice, which appeared in the *Transcript–Bulletin* once a

---

1. Stansbury Island is located at the southwest edge of the Great Salt Lake. Due to the lake's changing water levels, however, this "island" is currently a peninsula. In fact, "[t]here have been wide fluctuations of the elevation of the lake since it was first surveyed in 1850." *Utah State Rd. Comm'n v. Hardy Salt Co.,* 26 Utah 2d 143, 145, 486 P.2d 391, 392 (1971).

week from May 18 to June 8, 1993, stated in pertinent part:

> NOTICE IS HEREBY GIVEN that the Tooele County Commission will conduct a public hearing [on] June 15, 1993, ... concerning a proposal to vacate approximately eight (8) miles of the northerly portion of the Tooele County road located along the West side of Stansbury Island. A petition from landowners whose property adjoins the majority of this County road was filed with Tooele County asking that this road be vacated. One land owner in the same area is not included in the petition for vacation and, therefore, the Tooele County Commission, pursuant to its own order, has included the remainder of the County road running through these properties for consideration to be vacated.
>
> The legal description of the County road considered for vacation is as follows:
>
> > Commencing along the South line of Section 16, Township 1 North, Range 6 West, Salt Lake Base and Meridian, and continuing North through Sections 6, 9, 4 and 5 of the said Township and Range; and thence running through Sections 32, 29, 20, 21, 16 and 9 of Township 2 North, Range 6 West, Salt Lake Base and Meridian.

In addition to its notice in the *Transcript–Bulletin,* the County mailed written notice of the proposal to various property owners with land abutting West Stansbury Road, but it did not send written notice to the State of Utah ("the State").

¶ 3 Shortly thereafter, on June 15, 1993, the County held a public hearing concerning the Bleazards' petition. Approximately one month later, on August 17, 1993, the County enacted by a two-to-one vote Tooele County Ordinance 93–9, vacating the County's interest in West Stansbury Road pursuant to the description of the road published in the County's prior notice.

¶ 4 On June 11, 1999, the State filed suit in the Third District Court for Tooele County challenging the validity of Ordinance 93–9 pursuant to sections 27–12–102.3 and –102.4 of the Utah Code. Specifically, the State alleged that in adopting the ordinance, the County did not adhere to the notice requirements of section 27–12–102.4 because it did not mail the State written notice of the proposed vacation. At the time the County adopted Ordinance 93–9,[2] section 27–12–102.4 provided:

> No county road shall be ... vacated [pursuant to a landowner petition], unless notice of the pendency of the petition ... be given by publishing in a newspaper published or of general circulation in such county once a week for four consecutive weeks preceding action on such petition or intention, or, where no newspaper is published in the county by posting the notice in three public places therein for four consecutive weeks preceding such petition, and by mailing such notice to all owners of record of land abutting the county road proposed to be vacated addressed to the mailing addresses appearing on the rolls of the county assessor of the county wherein said land is located.

Utah Code Ann. § 27–12–102.4 (Supp.1993). The State argued that it was entitled to notice under this provision because West Stansbury Road crossed and abutted sovereign lands located below the meander line[3] of the Great Salt Lake, lands owned by the State since 1896 in conjunction with Utah's entry into the Union. *See, e.g., Utah v.*

---

2. In 1998, the legislature amended and recodified section 27–12–102.4 as section 72–3–108 of the Utah Code. *See* Utah Code Ann. § 72–3–108 (Supp.1999). Then, in 2000, the legislature amended section 72–3–108 to its current version. *See* Utah Code Ann. § 72–3–108 (Supp.2001). However, "we apply the law as it existed at the time of the violation charged," and we thus apply section 27–12–102.4 in this case as it existed in 1993. *Featherstone v. Schaerrer,* 2001 UT 86, n. 2, 34 P.3d 194; *see also Airport Hilton Ventures, Ltd. v. Utah State Tax Comm'n,* 1999 UT 26, n. 1, 976 P.2d 1197.

3. A meander line is a "survey line ... on a portion of land, usu[ally] following the course of a river or stream." *Black's Law Dictionary* 995 (7th ed.1999). Apparently, the meander line of the Great Salt Lake was surveyed in various segments between 1855 and 1966. Great Salt Lake Planning Team, Utah Dep't of Natural Resources, *Great Salt Lake Comprehensive Management Plan and Decision Document* 10 (2000).

*United States*, 403 U.S. 9, 12–13, 91 S.Ct. 1775, 29 L.Ed.2d 279 (1971).

¶ 5 Subsequently, on September 3, 1999, the State moved for summary judgment on the ground that the County had not complied with section 27–12–102.4's notice requirements. According to the State, section 27–12–102.4 required the County "to give notice by mail to abutting landowners in addition to publication in a newspaper or posting in three conspicuous places," and the County's failure to provide mailed notice rendered its vacation of the road null and void. In response, the County argued that the State was not entitled to mailed notice under section 27–12–102.4 because, according to the County, the State did not "appear [as an owner of record] on the rolls of the county assessor" and was not "an owner of record of land abutting the road to be vacated."

¶ 6 On December 15, 1999, the Bleazards filed a cross-motion for summary judgment. In their motion, the Bleazards contended, among other things, that the County's failure to mail the State notice of its proposal to vacate West Stansbury Road was not fatal to Ordinance 93–9 because section 27–12–102.4 "only require[d] written notice when notice by publication is not available." The Bleazards further argued that the State "was not a landowner listed on the rolls of the County assessor," and thus, section 27–12–102.4 did not require the County to mail the State notice of the proposed vacation. Finally, the Bleazards asserted that even if section 27–12–102.4 required counties to provide mailed notice in addition to notice by publication, the State was not entitled to mailed notice because the County's interests in West Stansbury Road "terminate[d] nearly [one] half mile from the nearest sovereign land."

¶ 7 Following the parties' respective motions for summary judgment, the district court conducted a hearing to consider whether the County's failure to mail the State notice of the proposed vacation of West Stansbury Road was improper. At the conclusion of the hearing, the court found that although "a question of fact [existed] as to whether the road [reached] to the meander line … and whether the State [was] an abutting landowner" of the road, the County

had complied with section 27–12–102.4 because publishing notice in the *Transcript Bulletin* was "sufficient" under the statute. Accordingly, the court entered summary judgment in favor of the County and the Bleazards in an order dated May 8, 2000. Interpreting section 27–12–102.4 to require either (1) notice by publication or (2) notice by posting and mailing, the court ruled: "[Section] 27–12–102.4 did not require that written notice be provided to the abutting landowners when notice by publication has been made[.]" The court further held that even if section 27–12–102.4 mandated mailed written notice, the County was not required to send such notice to the State because "it was not an abutting property owner on the rolls of the Tooele County Assessor." The State now appeals the district court's grant of summary judgment in favor of Tooele County and the Bleazards.

## STANDARD OF REVIEW

¶ 8 Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c); *see also, e.g., Wilcox v. Geneva Rock Corp.*, 911 P.2d 367, 368 (Utah 1996). In reviewing a grant of summary judgment, we afford "no deference to the trial court's conclusions of law: those conclusions are reviewed for correctness." *Blue Cross & Blue Shield of Utah v. State*, 779 P.2d 634, 636 (Utah 1989); *see also, e.g., Dairy Prod. Servs., Inc. v. City of Wellsville*, 2000 UT 81, ¶ 15, 13 P.3d 581. Likewise, a district court's interpretation of a statutory provision is a question of law that we review for correctness. *Bearden v. Croft*, 2001 UT 76, ¶ 5, 31 P.3d 537; *see also, e.g., Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 519 (Utah 1997).

## ANALYSIS

¶ 9 On appeal, the State raises two issues. First, the State argues that the district court erroneously interpreted section 27–12–102.4 of the Utah Code by (1) construing the provision as requiring counties to send abutting landowners mailed notice of a proposed road vacation only when notice by publication is

not available, and by (2) reading the provision as requiring counties to send mailed notice to parties who own abutting land only if that ownership is recorded on the rolls of the county assessor. Second, the State contends that the court erred by refusing to grant summary judgment in the State's favor because, under a proper interpretation of section 27–12–102.4, counties are required to provide abutting landowners mailed notice of a proposed vacation, and the County failed to serve the State with such notice. We address each issue in turn.

## I.  MAILED NOTICE

¶ 10  When interpreting statutes, our primary goal is to evince "the true intent and purpose of the Legislature." *Jensen v. Intermountain Health Care, Inc.,* 679 P.2d 903, 906 (Utah 1984). To discern the legislature's intent and purpose, we look first to the "best evidence" of a statute's meaning, the plain language of the act. *Id.; see also, e.g., City of Hildale v. Cooke,* 2001 UT 56, ¶ 36, 28 P.3d 697; *Hall v. Utah State Dep't of Corr.,* 2001 UT 34, ¶ 15, 24 P.3d 958. In reading the language of an act, moreover, we seek "to render all parts [of the statute] relevant and meaningful," *Millett v. Clark Clinic Corp.,* 609 P.2d 934, 936 (Utah 1980), and we therefore "presume the legislature use[d] each term advisedly and ... according to its ordinary meaning." *Nelson v. Salt Lake County,* 905 P.2d 872, 875 (Utah 1995). Consequently, we "avoid interpretations that will render portions of a statute superfluous or inoperative." *Hall,* 2001 UT 34 at ¶ 15, 24 P.3d 958; *see also, e.g., Platts v. Parents Helping Parents,* 947 P.2d 658, 662 (Utah 1997).

¶ 11  In the case now before us, two statutory provisions are relevant to the question of the legislature's intent regarding what notice a county must provide abutting landowners when vacating its interests in a county road. At the time Tooele County enacted Ordinance 93–9, a county could vacate its interests in a road under Utah law if "the county legislative body ... upon hearing [determined] that there [was] good cause for such ... vacation ..., that it [would] not be detrimental to the general interest, and that it should be made." Utah Code Ann. § 27–

12–102.1. Before convening such a hearing, however, the county was required to provide notice to abutting landowners in all but one circumstance. The statute stated:

> Notice of the intention of the county legislative body to vacate any county road, or part thereof, shall in all cases be given ... except when there is filed with the county legislative body written consent to such vacation by the owners of the property abutting the part of the county road proposed to be vacated, in which case such notice shall not be required.

*Id.* § 27–12–102.3. The legislature likewise specified in detail the content of, form of service for, and class of recipients to which a county's notice of a proposed vacation should be sent. Section 27–12–102.4 mandated that the county provide "notice of the pendency of the petition [for vacation] and the date of the hearing thereon," and that such notice

> be given by publishing in a newspaper published or of general circulation in such county once a week for four consecutive weeks preceding action on such petition or intention, or, where no newspaper is published in the county by posting the notice in three public places therein for four consecutive weeks preceding such petition, and by mailing such notice to all owners of record of land abutting the county road proposed to be vacated addressed to the mailing addresses appearing on the rolls of the county assessor of the county wherein said land is located.

*Id.* § 27–12–102.4.

¶ 12  The State asserts that the district court should not have granted summary judgment to the County and the Bleazards under section 27–12–102.4 because it did so on the basis of an incorrect interpretation of Utah's road abandonment statute. Specifically, the State argues that the court erred by construing section 27–12–102.4 as requiring mailed notice only when notice by publication is not available, and then only to abutting landowners whose ownership is recorded on the rolls of the county assessor. We agree that the district court incorrectly interpreted section 27–12–102.4 in both instances.

### A. Form of Service

¶ 13 The plain language of section 27–12–102.4 is unambiguous in regard to the form of service mandated by the provision's notice requirement. The section clearly indicates that a county proposing to vacate its interests in a road must provide *both* notice to the public through a newspaper publication or through posting *and* notice to landowners directly affected by the proposal through the mail. In pertinent part, the section states that notice shall be given

> by publishing in a newspaper ..., or, where no newspaper is published ... by posting the notice in three public places ..., and by mailing such notice to all owners of record....

*Id.* § 27–12–102.4. An application of "elementary rules of punctuation and grammar" further bolsters this reading of section 27–12–102.4. *Newspaper Agency Corp. v. Auditing Div. of Utah State Tax Comm'n*, 938 P.2d 266, 271 (Utah 1997). Although courts need not always consider punctuation to discern legislative intent, courts should not "arbitrarily ignore punctuation, but [should] give it due consideration and effect" where it may be used as an aid to ascertain the legislature's purpose. *Bd. of Educ. v. Hanchett*, 50 Utah 289, 293, 167 P. 686, 687 (1917); *see also, e.g., Elliot Coal Mining Co. v. Dir., Office of Workers' Comp. Programs*, 17 F.3d 616, 629–30 (3d Cir.1994) ("[T]he presence of a comma before the last clause in the statute suggests that the limiting clause applies to the entire series."). Here, the legislature's inclusion of commas both before and after the phrase "where no newspaper is published ... by posting the notice in three public places" serves to separate that clause from the preceding notice by publication and the subsequent notice by mail clauses. Utah Code Ann. § 27–12–102.4. In doing so, the legislature has set the notice by posting clause apart from the others, and thus, clarified that notice by posting is merely an alternative to notice by publication when publication is unavailable, while mailed notice is required in all cases.

¶ 14 Indeed, construing section 27–12–102.4 as allowing *either* notice by publication *or* notice by posting and notice by mail would nullify one statutory provision at the expense of preserving, at best, an alternate reading of another. Section 27–12–102.3 of the road abandonment statute exempts counties from the requirements of section 27–12–102.4 under the narrow circumstance where the landowners abutting the road proposed to be vacated unanimously consent in writing to the vacation. *Id.* § 27–12–102.3. If section 27–12–102.4 were construed as not requiring counties to mail notice to abutting landowners, however, the consent exemption of section 27–12–102.3 would become superfluous, since a county could vacate its interests in a road without ever specifically noticing those abutting landowners. Not only would such a construction place undue—and legislatively unanticipated—faith in the ability of the smallest of notices in a region's newspaper to reach the widest of audiences, but it would violate our "fundamental duty" to give effect to every provision of a statute. *Madsen v. Borthick*, 769 P.2d 245, 252 n. 11 (Utah 1988); *see also Hall*, 2001 UT 34 at ¶¶ 15, 18, 24 P.3d 958; *Platts*, 947 P.2d at 662.

¶ 15 Accordingly, we hold that the district court erred by ruling section 27–12–102.4 "did not require that written notice be provided to the abutting landowners" because the County had published notice in the *Transcript–Bulletin*. Rather, at the time the County proposed to vacate West Stansbury Road, the statute clearly required that counties provide both (1) public notice through publication or posting and (2) private notice via mail to abutting landowners.

### B. Class of Recipients

¶ 16 Having determined that mailed notice is required under section 27–12–102.4 regardless of whether a county publishes notice, we now turn to the question of to whom the County was required to provide mailed notice in this case. In its order granting summary judgment to the County and the Bleazards, the district court held that the County was not required to send mailed notice to the State because section 27–12–102.4 mandated mailed notice only to abutting landowners whose ownership was indicated on the county assessor's rolls, and the State

"was not an abutting property owner on the rolls of the Tooele County Assessor."

¶ 17 Contrary to the district court's interpretation, however, section 27–12–102.4's mailed notice provision does not limit its class of intended recipients to abutting landowners whose ownership is indicated on the rolls of the county assessor. Rather, the provision directs counties to mail notice to *all* abutting landowners of record, using each respective landowner's contact information as listed on the county assessor's rolls to address the notices for mailing. The provision states:

> No county road shall be ... vacated, unless notice of the pendency of the petition ... be given ... by mailing such notice *to all owners of record of land abutting the county road* proposed to be vacated *addressed to the mailing addresses appearing on the rolls of the county assessor* of the county wherein the land is located.

Utah Code Ann. § 27–12–102.4 (emphasis added). Thus, it is clear from the plain language of the statute that the district court erred by limiting section 27–12–102.4's mailed notice requirement to abutting landowners whose contact information is listed "on the rolls of the county assessor." *Id.* The terms "on the rolls of the county assessor" comprise only one part of the larger clause "addressed to the mailing addresses appearing on the rolls of the county assessor," and that clause indicates the place to which such notices should be sent without restricting in any way the scope of the parties that shall be noticed. *Id.*

¶ 18 Consequently, the relevant inquiry becomes not whether a landowner's contact information is listed on the rolls of the county assessor, but whether the landowner qualifies as a member of the class to which the county is required to provide mailed notice. To determine the parameters of this class,

we again turn to the plain language of section 27–12–102.4, which, as noted, requires that mailed notice be given "to all owners of record of land abutting the county road proposed to be vacated." *Id.* Thus, a county intending to vacate its interests in a road must send mailed notice to parties that satisfy two conditions, i.e., to parties who are (1) "owners of record" of land that (2) "abut[s] the county road proposed to be vacated." *Id.* To assess whether a given landowner satisfies these conditions, however, we must first construe each term "according to its ordinary and accepted meaning." *Nelson v. Salt Lake County*, 905 P.2d 872, 875 (Utah 1995); *see also, e.g., Arredondo v. Avis Rent A Car Sys., Inc.*, 2001 UT 29, ¶ 12, 24 P.3d 928; *Zoll & Branch, P.C. v. Asay*, 932 P.2d 592, 594 (Utah 1997).

1. "Owners of Record"

¶ 19 "Owner of record" is a legal term that denotes a "property owner in whose name the title appears in the public records." *Black's Law Dictionary* 1131 (7th ed.1999). Under most circumstances, such records are located in the place designated by the applicable recording act. In Utah, for instance, landowners record title to their property "in the office of the recorder of the county where the real property is located," Utah Code Ann. § 57–3–101(1) (2000), and this act of recording serves the purpose of "impart[ing] notice to all persons" of the owner's interest in the property. *Id.* § 57–3–101. Where state sovereign lands are involved, however, notice by recording with a designated government official is unnecessary because ownership of the property is vested in the state upon entrance into the Union, and the state's designation of those lands in its constitution, statutes, or otherwise therefore becomes the state's "public record" of its sovereign ownership.[4] As the

---

4. Moreover, we note that requiring the State to record title to its sovereign lands with a county recorder pursuant to section 57–3–101 would lead to truly absurd results, since, unlike properties it purchases or takes from other landowners, the State assumes ownership of these lands in its capacity as sovereign and thus never receives written title to the lands. Therefore, although the State clearly owns its sovereign lands, it

simply has no written title of the lands to record with a county recorder. *See State v. Redd*, 1999 UT 108, ¶ 12, 992 P.2d 986 ("Our clear preference is the reading that reflects sound public policy, as we presume that must be what the legislature intended. In other words, we interpret a statute to avoid absurd consequences." (citation omitted)); *see also, e.g., Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1292 & n. 24 (Utah

United States Supreme Court has stated, "It is settled law in this country that lands underlying navigable waters within a state belong to the State in its sovereign capacity...." *United States v. Holt State Bank,* 270 U.S. 49, 54, 46 S.Ct. 197, 70 L.Ed. 465 (1926). Consequently, a party qualifies as an "owner of record" under section 27–12–102.4 of the Utah Code if (1) the party has recorded title to the land at issue with the county recorder, or if (2) the land at issue is state sovereign land and is designated as such by public record.

2. "Land Abutting the County Road Proposed To Be Vacated"

¶ 20 Like "owner of record," the word "abut" is a term commonly used in the context of property law. In its most ordinary sense, the term is employed to describe properties that "join at a border or boundary." *Black's Law Dictionary* 10 (7th ed.1999). For example, in *Farnsworth v. Soter's, Inc.,* we observed: " '[A]but' ... 'conveys the idea of bordering on, [or] bounded by, with nothing intervening.' " 24 Utah 2d 199, 200, 468 P.2d 372, 373 (1970) (citation omitted) (emphasis omitted); *see also* 1 C.J.S. *Abut* (1985). Accordingly, land that joins, borders, or bounds a county road proposed to be vacated, with nothing intervening, is considered to be land that "abut[s] the county road" under section 27–12–102.4.

## II. FAILURE TO PROVIDE MAILED NOTICE

¶ 21 Because section 27–12–102.4 requires counties to provide mailed notice "to all owners of record of land abutting the county road proposed to be vacated," we now examine the State's second claim on appeal: that the district court erred by refusing to grant summary judgment in the State's favor because the County failed to send the State mailed notice of the proposed vacation of West Stansbury Road.

¶ 22 As a preliminary matter, we note that the County concedes on appeal that it "did not mail notice to the State of Utah." Moreover, because notice is required under section 27–12–102.4 to ensure that a "county legislative body" considering a road vacation receives a full opportunity to receive comment on whether a proposed vacation "will not be detrimental to the general interest," Utah Code Ann. § 27–12–102.1, failure to provide the required notice under section 27–12–102.4 renders a county's vacation of its interests in a road "a nullity." *Ercanbrack v. Judd,* 524 P.2d 595, 597 (Utah 1974); *see also Henderson v. Osguthorpe,* 657 P.2d 1268, 1270 (Utah 1982) (stating that "even where a substantial period of nonuse of a public roadway has elapsed, no vacation occurs unless the specific statutory requirements of [sections] 27–12–102.1 to –102.4 are met"). Consequently, whether the district court erred by refusing to grant summary judgment in the State's favor turns solely on whether the State qualified as a member of the class to which the County was required to provide such notice, specifically, as an "owner of record" of land that "abutted" West Stansbury Road.

¶ 23 In this case, it is clear that the State qualifies as an "owner of record" for the purposes of receiving mailed notice under Utah's road vacation statute. Under section 27–12–102.4, an "owner of record" is a landowner that either has recorded title with the recorder of the county where the property is located or owns the property as a sovereign with the property designated as such by public record. *See supra* ¶ 19. Here, the land at issue is sovereign land that lies below the meander line of the Great Salt Lake. Fee title to this land became vested in the State in its sovereign capacity when Utah entered the Union in 1896, a fact reflected in article XX of the Utah Constitution, codified in the State's statutes since 1898, and reaffirmed by the United States Supreme Court under the equal footing doctrine[5] in

1993); *Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1113 (Utah 1991); *Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1045 n. 39 (Utah 1991).

5. "[T]he 'equal footing' principle [accords] newly admitted States the same property interests in submerged lands as was enjoyed by the Thirteen Original States as successors to the British Crown." *Utah v. United States,* 403 U.S. 9, 10, 91 S.Ct. 1775, 29 L.Ed.2d 279 (1971).

1971.[6] The most recent version of the relevant section of the Utah Code, which was in effect at the time the County adopted Ordinance 93–9, likewise defines "sovereign lands" as including "those lands lying below the ordinary high water mark of navigable bodies of water at the date of statehood and owned by the state by virtue of its sovereignty." Utah Code Ann. § 65A–1–1(5) (2000). Indeed, in *Utah State Road Commission v. Hardy Salt Co.*, we stated:

> We [hold] that [the] Great Salt Lake is a navigable body of water, and that the ownership of the lake bed became vested in the State of Utah at the time of its admission to the Union. . . .

26 Utah 2d 143, 146–47, 486 P.2d 391, 393 (1971); *see also State v. Rolio*, 71 Utah 91, 107, 262 P. 987, 993 (1927). Under these circumstances, neither the County nor the Bleazards have any claim that the State is not the owner of record of lands located below the meander line of the Great Salt Lake. It has been repeatedly adjudicated— both by this court and by the United States Supreme Court—that the State owns those lands as an ancillary to its entrance into the Union, and the State has continually made notice of such ownership as a matter of public record, namely, in its statutes and constitution. *See* Utah Const. art. XX; Utah Code Ann. § 65A–1–1(5); 1927 Utah Laws 9, § 1; Utah Rev. Stat. § 62–1–2325 (1898). Indeed, given that Utah's statutes have recognized sovereign ownership of lands below the meander line of the Great Salt Lake for over a hundred years, no legitimate argument can be made that the State's ownership of those lands was not a matter of public record in 1993. *See, e.g.,* Utah Code Ann. § 65A–1–1(5); 1927 Utah Laws 9, § 1; Utah Rev. Stat. § 62–1–2325 (1898); *see also Rolio*, 71

Utah at 106–07, 262 P. at 992–93 (describing the relevant statutory provisions' evolution from 1911 to 1927). Therefore, we hold that the State is the owner of record of lands located below the meander line of the Great Salt Lake for purposes of section 27–12–102.4.

■ ¶ 24 As a result, if the State's property located below the meander line of the Great Salt Lake abuts West Stansbury Road as described in the County's proposed vacation notice and subsequent enactment, then Ordinance 93–9's vacation of the County's interests in the road is null and void. *See Ercanbrack*, 524 P.2d at 597. In granting summary judgment, however, the district court did not rule on whether the State's land abutted the county road. Rather, the court found that "a question of fact [existed] as to whether the road even went to the meander line ... and whether the State w[as] an abutting landowner," and then granted summary judgment in favor of the County and the Bleazards based upon its erroneous reading of section 27–12–102.4 as not requiring mailed notice where a county has provided notice by publication. Accordingly, because the district court did not determine whether the State's property abutted West Stansbury Road, a disputed issue of material fact exists, and we therefore remand to the district court for a determination on this issue. *See Lamb v. B & B Amusements Corp.*, 869 P.2d 926, 928 (Utah 1993) ("The party moving for summary judgment must establish a right to judgment based on the applicable law as applied to an undisputed material issue of fact."); *see also, e.g., K & T, Inc. v. Koroulis*, 888 P.2d 623, 628 (Utah 1994); *Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc.*, 789 P.2d 24, 25 (Utah 1990); Utah R. Civ. P. 56(c).[7]

6. *See* Utah Const. art. XX ("All lands of the State that have been ... acquired ... are hereby accepted, and declared to be the public lands of the State...."); 1927 Utah Laws 9, § 1 ("[T]he beds of all ... streams and lakes which at the time of said admission of Utah into the Union were navigable in fact ... has at all times thereafter been and now is vested in the State of Utah."); Utah Rev. Stat. § 62–1–2325 (1898) (giving state board of land commissioners control of "all lands heretofore ... granted to this state by the government"); *Utah v. United States*, 403 U.S. 9, 12–13, 91 S.Ct. 1775, 29 L.Ed.2d 279

(1971) (holding that lands below the meander line of the Great Salt Lake were navigable in 1896, and thus, belong to Utah and not the United States); *see also Utah v. United States*, 420 U.S. 304, 95 S.Ct. 1153, 43 L.Ed.2d 211 (1975).

7. Despite the district court's finding that a disputed issue of material fact existed as to whether West Stansbury Road abuts the State's sovereign lands below the meander line, the Bleazards assert on appeal that the State is not an abutting landowner "as a matter of law." Specifically,

¶ 25 In determining on remand whether the State's sovereign lands abut West Stansbury Road, the district court shall apply the correct legal standard under section 27–12–102.4. Specifically, the court shall determine whether the State's land joins, borders, or bounds, with nothing intervening, West Stansbury Road as it is described in the County's proposed vacation notice and subsequent enactment of that proposal:

Commencing along the South line of Section 16, Township 1 North, Range 6 West, Salt Lake Base and Meridian, and continuing North through Sections 6, 9, 4 and 5 of the said Township and Range; and thence running through Sections 32, 29, 20, 21, 16 and 9 of Township 2 North, Range 6 West, Salt Lake Base and Meridian.

See *Farnsworth v. Soter's, Inc.*, 24 Utah 2d 199, 200, 468 P.2d 372, 373 (1970). If the district court determines that the State's land abuts West Stansbury Road as it is described in the County's proposed vacation notice, then the court must grant summary judgment in the State's favor, overturning Tooele County Ordinance 93–9 as null and void. *See Ercanbrack*, 524 P.2d at 597. If, conversely, the court determines that the State's land does not abut the road, then the court shall enter summary judgment in favor of the County and the Bleazards, allowing Ordinance 93–9 to remain in effect.

## CONCLUSION

¶ 26 The district court erred by construing section 27–12–102.4 of the Utah Code as requiring counties to provide mailed notice of a proposed road vacation only where notice by publication is not available, by ruling that mailed notice need be provided only to abutting landowners whose ownership is reflected on the rolls of the county assessor, and thus, by granting summary judgment in favor of

Tooele County and the Bleazards. Accordingly, we reverse the district court's summary judgment order and remand for further proceedings in a manner consistent with this opinion.

¶ 27 Chief Justice HOWE, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Associate Chief Justice RUSSON'S opinion.

---

the Bleazards contend that the portion of West Stansbury Road that crosses the meander line was never public and "is in fact a private easement leading to ... MagCorp['s] parcel and a private road across the MagCorp parcel to ... the Great Salt Lake." In making this argument, however, the Bleazards neither challenge the district court's factual finding nor provide this court with adequate, judicially noticeable evidence to determine that the road does not abut the State's land as a matter of law. In fact, even the Coun-

ty's own proposed vacation notice, which indicates that the County intended to vacate a road "running through" the survey section where MagCorp's land is located, suggests that it simply is not agreed whether the County's interests in West Stansbury Road continued to the meander line of the Great Salt Lake. Therefore, as explained above, we must remand the issue of abutment for further proceedings before the district court.