2005 UT App 168

**AWINC CORP., Plaintiff and Appellee,**

v.

**Randy T. SIMONSEN, Defendant
and Appellant.**

No. 20030318–CA.

Court of Appeals of Utah.

April 14, 2005.

Reed M. Richards, Ogden, for Appellant.

Gary A. Weston, Nielsen & Senior PC, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and GREENWOOD.

## OPINION

BILLINGS, Presiding Judge:

¶ 1 Defendant Randy T. Simonsen (Simonsen) appeals from the trial court's determination that an unimproved mountain road which crosses Simonsen's property and leads to AWINC Corporation's property (AWINC) is a public road under Utah Code section 72–5–104(1). *See* Utah Code Ann. § 72–5–104(1) (2004). We affirm.

## BACKGROUND

■ ¶ 2 AWINC and Simonsen own property on adjacent parcels in the Uinta National Forest.[1] Both properties are accessed by an unimproved mountain road (Middle Fork Road).

¶ 3 Simonsen attempted to block access to Middle Fork Road. In 1996 or 1997, Simonsen placed a metal gate (the Gate) across Middle Fork Road and constructed a fence which extended 200 feet on each side of the Gate. Also in 1997, a fence wire drop gate (the Livestock Gate) was constructed across

Middle Fork Road. The gates prevented use of that part of the road by AWINC.

¶ 4 From the 1960s until 1995, portions of what is now Simonsen's property were leased for sheep grazing purposes. One or more of the lessees placed rocks and tires along a neighboring road called Left Fork Road with words declaring "No Trespass." Signed rocks were also placed in the general area where Middle Fork Road accessed Left Fork Road, but these signs did not halt public use of Middle Fork Road.

¶ 5 At least four individuals testified that their friends and family used Middle Fork Road for recreational purposes on a regular basis. Cullen Goodwin, David Ellis, Fred Addis, and Kenneth Earle testified for AWINC as to their use of Middle Fork Road by themselves, friends, and members of their respective families over a period of many years. They testified that they did not own property in the vicinity of Middle Fork Road nor in the Soldier Summit mountain area, that they used Middle Fork Road without ever asking permission or having been given permission for its use, and that while operating motor vehicles on the road, it was common for them to encounter other people not part of their group or party who were also operating motor vehicles on the road. These individuals testified that they were never asked not to use the road, nor were they told that they could not use the road. Moreover, they testified that none of them at anytime had seen a gate across Middle Fork Road prior to the recent construction of the Gate and the Livestock Gate.

¶ 6 AWINC initiated litigation against Simonsen claiming a prescriptive easement, including a claim for trespass, damages for the erection of the Gate across Middle Fork Road, a request for permanent injunction requiring the opening of the Gate, and a request for a declaratory judgment that Middle Fork Road be determined a public road. The trial court dismissed AWINC's claims for a prescriptive easement, damages, and an injunction to remove the Gate. However, at the conclusion of the trial, the court deter-

---

1. AWINC has failed to adequately brief its standing argument and thus we refuse to deal with it in detail. *See Calhoun v. State Farm Mut. Auto.* *Ins. Co.*, 2004 UT 56, ¶ 34, 96 P.3d 916 (declining to address an issue that was inadequately briefed).

mined that, pursuant to Utah Code section 72–5–104(1) and its predecessor, Utah Code section 27–12–89, Middle Fork Road was a public road and directed Simonsen to remove the lock from the Gate blocking the road. Simonsen appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 7 First, Simonsen argues the trial court erred in concluding Middle Fork Road was a public road because there was not sufficient evidence to sustain the clear and convincing burden of proof. To establish the dedication of a public road, we require clear and convincing evidence. *See Thomson v. Condas,* 27 Utah 2d 129, 493 P.2d 639, 639 (1972). It is well established that we review findings of fact under the clearly erroneous standard. *See State v. Pena,* 869 P.2d 932, 935 (Utah 1994). To find clear error, this court "must decide that the factual findings made by the trial court are not adequately supported by the record, resolving all disputes in the evidence in a light most favorable to the trial court's determination." *Id.* at 935–36.

¶ 8 Second, Simonsen argues that the trial court erred as a matter of law by determining that Middle Fork Road is a road abandoned to the public. We review application of law for correctness. *See id.* at 936 (stating that in reviewing "a trial court's determination of the law[,] ... [an] appellate court decides the matter for itself and does not defer in any degree to the trial judge's determination of law").

## ANALYSIS

### I. Marshaling

■ ¶ 9 Simonsen argues that the court's factual findings were not supported by clear and convincing evidence. Because Simonsen challenges the factual findings, he " 'must marshal the evidence in support of the findings and then demonstrate that despite this evidence,' " the trial court's findings are not supported by clear and convincing evidence. *Young v. Young,* 1999 UT 38, ¶ 15, 979 P.2d 338 (quoting *In re Estate of Bartell,* 776 P.2d 885, 886 (Utah 1989) (other citation omitted)). To properly marshal the evidence, Simonsen

must first list all of the evidence supporting the challenged finding. *See, e.g., Tingey v. Christensen,* 1999 UT 68, ¶ 7, 987 P.2d 588. Simonsen must then show that the marshaled evidence is legally insufficient to support the findings when viewing the evidence and inferences in a light most favorable to the decision. *See id.*

■ ¶ 10 Simonsen has failed to properly marshal the evidence to show that the findings are not supported by clear and convincing evidence. Simonsen failed to, "in comprehensive and fastidious order, [present] *every scrap* of competent evidence introduced at trial which supports the very findings the appellant resists." *West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1315 (Utah Ct.App.1991) (emphasis added). Rather, Simonsen provided an incomplete list of evidence supporting the factual findings and then claims that the findings are not supported by clear and convincing evidence. Simonsen not only failed to provide a comprehensive list of evidence, but he also failed to "ferret out a fatal flaw in the evidence," and thus Simonsen fails "to convince [us] that the court's finding[s] ... [are] clearly erroneous." *Id.* Accordingly, we "assume[ ] that the record supports the findings of the trial court and proceed[ ] to a review of the accuracy of the lower court's conclusions of law and the application of that law in the case." *Heber City Corp. v. Simpson,* 942 P.2d 307, 312 (Utah 1997) (alterations in original) (quotations and citations omitted).

### II. Highway Abandoned to Public

¶ 11 Utah Code section 72–5–104(1) provides that in order to declare a highway dedicated and abandoned to the public, it must be established that the highway "has been continuously used as a public thoroughfare for a period of ten years." Utah Code Ann. § 72–5–104(1) (2004). The Utah Supreme Court has determined that continuous use of a road exists when "the public, even though not consisting of a great many persons, made a continuous and uninterrupted use" not necessarily every day, but "as often as they found it convenient or necessary." *Boyer v. Clark,* 7 Utah 2d 395, 326 P.2d 107, 109 (1958); *see Heber City,* 942 P.2d at 311

(determining as a matter of law that a road was used continuously where the evidence demonstrated that "the public made a continuous and uninterrupted use of" the road "as often as they found it convenient or necessary"). Similarly, in *Richards v. Pines Ranch, Inc.,* the Utah Supreme Court stated that "use may be continuous though not constant .... provided it occurred as often as the claimant had occasion or chose to pass.... Mere intermission is not interruption." 559 P.2d 948, 949 (Utah 1977) (quotations and citation omitted).

■ ¶ 12 Simonsen argues that use of Middle Fork Road was not continuous because use was blocked by the Gate, the Livestock Gate, and "No Trespass" signs that both he and previous lessees installed. In *Campbell v. Box Elder County,* this court determined that there was not continuous use of a road because landowners generally locked a gate that crossed the road, and several witnesses testified that they were prevented access to the road due to the locked gate. *See* 962 P.2d 806, 809 (Utah Ct.App.1998). However, *Campbell* is distinguishable from the instant case because the evidence demonstrates that members of the general public used Middle Fork Road significantly more than ten years before Simonsen erected the gates in 1996 and 1997.

¶ 13 For example, Earle, his family, and his friends used the road every year starting around July 4th through late October as early as the 1940s or early 1950s. Goodwin, Addis, their families, and their friends used Middle Fork Road every year during May and through October or November starting in 1965. Further, Middle Fork Road was used as recently as either 1977 or 1978 by Ellis, who, along with family and friends, also used the road every year starting in May ending in November. Each witness testified that he used the road every year until the erection of the Gate in 1996 or 1997.

■ ¶ 14 Moreover, each witness testified that he did not use the road every day, but that he used the road for recreational pur-poses on a regular basis so long as the weather permitted. Under Utah law, the public need only use the road whenever they find it "necessary or convenient." *Id.* This evidence supports the trial court's determination that "the public used the road whenever they found it necessary or convenient and use was limited only by prevailing weather conditions."

¶ 15 Simonsen argues that the "No Trespass" signed rocks and tires placed in the area in the 1960s prevent a conclusion that the public used the road continuously. However, after reviewing the record, we are persuaded that the signs conveyed, and were intended to convey, the message that travelers should stay off of what is now Simonsen's property, not that travelers should stay off of Middle Fork Road in particular. Further, it is undisputed that this was the understanding of those using the road during this period. Therefore, we agree that there was continuous use of Middle Fork Road.

■ ¶ 16 We also agree with the trial court that Middle Fork Road was used as a public thoroughfare. To satisfy this requirement, there must be passing or travel by the public without permission.[2] *See Heber City Corp. v. Simpson,* 942 P.2d 307, 311 (Utah 1997). It is undisputed that there was travel over Middle Fork Road without permission.

¶ 17 In addition, the Utah Supreme Court has defined "public" in stating that adjoining property owners cannot be considered members of the public generally "because adjoining owners may have documentary or prescriptive rights to use the road or their use may be by permission of the owners of the fee of the road." *Id.* at 312 (quoting *Draper City v. Estate of Bernardo,* 888 P.2d 1097, 1099 (Utah 1995)). Here, the users of Middle Fork Road were not adjoining property owners. Each of the four users testified that he had never owned or leased property in the area of Middle Fork Road and used the road for recreational hunting, fishing, and camping. The trial court found the four users were members of the general public. We

---

2. The Utah Supreme Court noted that "[w]e have subsequently abandoned ... the requirement that the owner must consent to the dedication."

*Heber City Corp. v. Simpson,* 942 P.2d 307, 311 (Utah 1997).

agree that the users were members of the public.

¶ 18 Finally, Simonsen contends that Middle Fork Road was not a public thoroughfare because the users were given permission. The individuals who used Middle Fork Road testified that they obtained permission to hunt and paid a fee from time to time originally from a previous owner of a portion of what is now AWINC property and then later from AWINC. However, this permission was not for use of Middle Fork Road, but for use of what is now a portion of AWINC property. In addition, the hunting privileges were requested and secured in 1991 to 1993 at the earliest. As of that time, Ellis had been using Middle Fork Road for at least thirteen years and Goodwin, Addis, and Earle for at least twenty-five years. Thus, we agree that any permission that was given "did not pertain to the [Simonsen property] or that portion of Middle Fork Road coursing across the [Simonsen property]" and was given long after the ten year statutory time period was fulfilled.

■ ¶ 19 Finally, the evidence supports the trial court's determination that use of Middle Fork Road occurred for at least ten years. For example, Earle, his family, and his friends used the road as early as the 1940s or early 1950s. Goodwin and Addis testified that their family and friends used Middle Fork Road starting in 1965. Thus, the evidence shows that continuous use by the public took place as early as the 1940s or 1950s—at least forty years before the erection of any gate or fence.

## CONCLUSION

¶ 20 We conclude that Middle Fork Road was abandoned to public use. Accordingly, we affirm.

¶ 21 WE CONCUR: JAMES Z. DAVIS and PAMELA T. GREENWOOD, Judges.