2006 UT App 104

STATE of Utah, by and through the DIVISION OF FORESTRY, FIRE & STATE LANDS, Plaintiff, Appellee, and Cross-appellant,

v.

SIX MILE RANCH COMPANY, a Utah corporation; Craig S. Bleazard, an individual; Mark C. Bleazard, an individual; John D. Bleazard, an individual; Tooele County; and American Oil Company, a Maryland corporation, Defendants, Appellants, and Cross-appellees.

No. 20040868–CA.

Court of Appeals of Utah.

March 16, 2006.

Brent A. Bohman, Morgan, for Appellants and Cross-appellees.

Mark L. Shurtleff, Atty. Gen., Stephen G. Schwendiman, Alison D. Garner, and Jonathan G. Jemming, Asst. Atty. Gen., Salt Lake City, for Appellee and Cross-appellant.

Before GREENWOOD, Associate P.J., DAVIS and McHUGH, JJ.

OPINION

McHUGH, Judge:

¶1 Six Mile Ranch Company, Craig S. Bleazard, Mark C. Bleazard, and John D. Bleazard (collectively, the Bleazards) appeal

the portion of the trial court's ruling in favor of the State of Utah (the State), and the State cross-appeals the portion in favor of the Bleazards. We affirm.

## BACKGROUND

¶ 2 The Bleazards own property on Stansbury Island (the Island) in Tooele County (the County), Utah. The West Stansbury Road runs from the southern end of the Island to the northern end and terminates at the meander line of the Great Salt Lake. The Pass Canyon Road, the Cable Gate Road, and the South Side Road (collectively, the Side Roads) are essentially perpendicular to and accessed by way of the West Stansbury Road. The Side Roads provide access to parts of the Island located east of the West Stansbury Road. The West Stansbury Road, the Pass Canyon Road, and the Cable Gate Road all cross private property, including property owned by the Bleazards.

¶ 3 In 1993, the Bleazards petitioned the County to abandon any interest it had in the West Stansbury Road. The County agreed to do so and, in accordance with Utah Code section 27–12–102.4, see Utah Code Ann. § 27–12–102.4 (Supp.1993),[1] mailed written notice of its intent to abandon its interest in the West Stansbury Road to all owners of property abutting the road, with the exception of the State. Thereafter, the County adopted Tooele County Ordinance 93–9 (Ordinance 93–9) to officially abandon any interest it had in the West Stansbury Road. After Ordinance 93–9 was adopted, the Bleazards placed a locked gate across the West Stansbury Road at the point it initially crossed their property on the south end of the Island.

¶ 4 The State then filed suit against the Bleazards, the County, and American Oil Company,[2] challenging the validity of Ordinance 93–9 and seeking an order declaring that the West Stansbury Road had been dedicated to the public pursuant to Utah Code section 72–5–104(1). See Utah Code Ann. § 72–5–104(1) (2001).[3] The State alleged that Ordinance 93–9 was invalid because the County had failed to comply with the statutory notice requirements of section 27–12–102.4. The trial court ruled that the County had complied with the requirements of section 27–12–102.4 and entered summary judgment in favor of the County and the Bleazards.

¶ 5 The State appealed, and the Utah Supreme Court reversed the trial court's grant of summary judgment, holding that the trial court erred in its interpretation of section 27–12–102.4. See State v. Tooele County, 2002 UT 8, ¶ 26, 44 P.3d 680. The Tooele County court held that the State was entitled to written notice under section 27–12–102.4, but only if its land abuts the West Stansbury Road. See id. at ¶¶ 23–24. Because this was a disputed issue of material fact, the supreme court held that the trial court improperly granted summary judgment and remanded for the resolution of that issue. See id. at ¶ 24.

¶ 6 On remand, the Bleazards and the County conceded that the West Stansbury Road abuts the meander line of the Great Salt Lake, which marks the boundary of State sovereign land. Accordingly, the trial court entered summary judgment in favor of the State, declaring Ordinance 93–9 invalid. The trial court rejected the Bleazards' contention that Tooele County required it to

---

1. In 1998, the legislature amended and recodified section 27–12–102.4 as section 72–3–108 of the Utah Code. See Utah Code Ann. § 72–3–108 (Supp.1999). Then, in 2000, the legislature amended section 72–3–108 to its current version. See Utah Code Ann. § 72–3–108 (Supp.2001). However, "we apply the law as it existed at the time of the violation charged," and we thus apply section 27–12–102.4 in this case as it existed in 1993.
State v. Tooele County, 2002 UT 8, ¶ 4 n. 2, 44 P.3d 680 (other citations omitted).

2. Soon after this suit was filed, the State and American Oil Company filed, and the trial court

granted, a joint motion and stipulation for voluntary dismissal with prejudice of the claims against American Oil Company.

3. The previous version of this provision, see Utah Code Ann. § 27–12–89 (1995), was in effect when some of the events of this case transpired. However, the most current version, see id. § 72–5–104(1) (2001), is substantively identical to that previous version. Therefore, as a convenience to the reader, all references and citations throughout this opinion will be to the most current version.

determine on remand not just whether State land abuts the West Stansbury Road, but also whether the West Stansbury Road had been dedicated to the public all the way to the meander line of the Great Salt Lake. The trial court was similarly unpersuaded by the Bleazards' argument that the County was excused from any requirement to send written notice to the State under section 27–12–102.4 because the State allegedly had actual notice of the County's intent to abandon its interest in the West Stansbury Road.

¶ 7 After the entry of summary judgment in favor of the State on the invalidity of Ordinance 93–9, the only issue remaining for trial was whether the West Stansbury Road and the Side Roads had been dedicated to the public pursuant to section 72–5–104(1).[4] After a three-day trial, the trial court ruled that the West Stansbury Road had been dedicated to the public, but that the Side Roads had not. The Bleazards appeal the trial court's ruling that the West Stansbury Road is a public road by dedication, and the State cross-appeals the trial court's ruling that the Pass Canyon Road and the Cable Gate Road (collectively, the Pass and Cable Roads) are not public roads by dedication.[5]

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Both parties challenge the trial court's holdings under Utah Code section 72–5–104(1). *See* Utah Code Ann. § 72–5–104(1). The Bleazards argue that the trial court erred by ruling that the West Stansbury Road is public by dedication. In the alternative, the Bleazards contend that even if a portion of the West Stansbury Road is public, the trial court erred by concluding that the portion of the West Stansbury Road north of the Cable Gate Road is a public road by dedication. In its cross-appeal, the State argues that the trial court erred by concluding that the Pass and Cable Roads are not public roads by dedication.

 ¶ 9 The trial court's ultimate conclusion that the facts of this case either satis-

fy or do not satisfy the requirements of section 72–5–104(1) is a mixed question of fact and law, which we review for correctness. *See Heber City Corp. v. Simpson,* 942 P.2d 307, 309 (Utah 1997) (citing *State v. Pena,* 869 P.2d 932, 936 (Utah 1994)). However,

> [h]istorically, we have given trial courts a fair degree of latitude in determining the legal consequences under section [72–5–104(1)] of facts found by the court.... Granting discretion to the trial court is appropriate under that section, as its legal requirements, other than the ten-year requirement, are highly fact dependent and somewhat amorphous. The issues presented under section [72–5–104(1)], therefore, do not lend themselves well to close review by this court, as we would be hard-pressed to establish a coherent and consistent statement of the law on a fact-intensive, case-by-case review of trial court rulings. *Therefore, when reviewing a trial court's decision regarding whether a public highway has been established under section [72–5–104(1)], we review the decision for correctness but grant the court significant discretion in its application of the facts to the statute.* Finally, we require[ ] proof of dedication by clear and convincing evidence.

*Id.* at 309–10 (final alteration in original) (emphasis added) (citing *Pena,* 869 P.2d at 940) (quotations and other citations omitted).

 ¶ 10 The Bleazards also argue that the trial court erred by declaring Ordinance 93–9 invalid based upon its interpretation of *State v. Tooele County,* 2002 UT 8, 44 P.3d 680. Finally, the Bleazards invite us to adopt an actual notice exception to the notice requirement of Utah Code section 27–12–102.4. *See* Utah Code Ann. § 27–12–102.4 (Supp.1993). "Whether a trial court correctly interpreted a prior judicial opinion is a question of law that we review for correctness." *Jensen v. IHC Hosps., Inc.,* 2003 UT 51,¶ 56, 82 P.3d 1076. Similarly, interpretation of a statute "presents a question of law,

---

4. Although not contained in its complaint, the State added the Side Roads to its public dedication claims by stipulation of the parties.

5. Although the trial court also ruled that the South Side Road had not been dedicated to the public, that decision has not been challenged on appeal.

which we review for correctness, granting no deference to the trial court." *Pugh v. Draper City*, 2005 UT 12, ¶ 7, 114 P.3d 546.

## ANALYSIS

### I. Public Dedication

¶ 11 Utah Code section 72–5–104(1) provides that "[a] highway is dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years." Utah Code Ann. § 72–5–104(1). "Thus, for a road to become a public highway by dedication under section [72–5–104(1)], there must be (i) continuous use, (ii) as a public thoroughfare, (iii) for a period of ten years." *Simpson*, 942 P.2d at 310.

#### A. West Stansbury Road

¶ 12 The Bleazards argue that the trial court erred by determining that the West Stansbury Road is a public road by dedication. The Bleazards contend that the following elements have not been satisfied in this case: (1) continuous use and (2) use as a public thoroughfare. We will address each of these elements in turn.

##### 1. Continuous Use

¶ 13 The Bleazards assert that the trial court erred by determining that the public's use of the West Stansbury Road was continuous. For purposes of section 72–5–104(1), "[t]he Utah Supreme Court has determined that continuous use of a road exists when 'the public, even though not consisting of a great many persons, made a continuous and uninterrupted use' not necessarily every day, but 'as often as they found it convenient or necessary.'" *AWINC Corp. v. Simonsen*, 2005 UT App 168, ¶ 11, 112 P.3d 1228 (quoting *Boyer v. Clark*, 7 Utah 2d 395, 326 P.2d 107, 109 (1958)). Further, "'use may be continuous though not constant[,] provided it occurred as often as the claimant had occasion or chose to pass. Mere intermission is not interruption.'" *Campbell v. Box Elder County*, 962 P.2d 806, 809 (Utah Ct.App. 1998) (emphasis omitted) (quoting *Richards v. Pines Ranch, Inc.*, 559 P.2d 948, 949 (Utah 1977)).

¶ 14 The Bleazards contend that the following findings of fact made by the trial court are inconsistent with its conclusion that the public's use of the West Stansbury Road was continuous:

27. Historical private owners of the Island differentiated between the public's use of the "public road" and trespass onto private property, and on occasion did ask people to leave the private property adjoining the West Stansbury Road, and on occasion, when individuals were located shooting guns from the roadway itself onto private property, such individuals were also asked to leave.

. . . .

29. Over the years, cattle operations on the Island were conducted by the Bleazards and their progenitors, as well as leasing operations by the Castagnos and their progenitors.

30. Ed Cassity, the progenitor of the Bleazards and owner of land on the Island, as well as other owners and stock raisers, differentiated between use of the road by the public and those who used guns around the cattle operations, either on the West Stansbury Road or on private property.

31. On several occasions, people with guns were asked to leave private property on the Island where cattle were located and asked to go south onto public lands.

32. As long as people were not hunting near cattle or taking weapons on private areas around cattle, the public was allowed to use the road for traveling and [was] not asked to leave the road.

¶ 15 The Bleazards have misapprehended these findings by considering them outside the context of the entire decision. Throughout its written findings and conclusions, the trial court continually draws the distinction between the public's use of the West Stansbury Road and the public's use of the private property adjoining the West Stansbury Road. These findings simply reit-

erate this distinction. Although these findings identify occasions when people were asked to leave either the private property adjoining the West Stansbury Road or the West Stansbury Road itself, the findings also demonstrate that such people were not asked to leave based upon their use of the West Stansbury Road. Rather, they were asked to leave because they trespassed on the private property adjoining the West Stansbury Road; shot guns from the West Stansbury Road onto the private property adjoining the West Stansbury Road; or used guns, possessed guns, or hunted near cattle on the private property adjoining the West Stansbury Road. Accordingly, these findings do not show, as the Bleazards assert, that members of the public were not able to use the West Stansbury Road " 'as often as they found it convenient or necessary.' " *AWINC Corp.*, 2005 UT App 168 at ¶ 11, 112 P.3d 1228 (quoting *Boyer*, 326 P.2d at 109). Rather, they show that the owners of the adjacent property had a legitimate interest in protecting that property from trespassers and vandals.

¶ 16 Moreover, the Bleazards have not attempted to challenge the following findings of fact supporting the trial court's conclusion that the public's use of the West Stansbury Road was continuous:

21. From 1949 until 1993, the general public used the West Stansbury Road and could "come and go" on the road at will and at times as they chose at their convenience.

22. From 1949 until 1993, the general public used the West Stansbury Road for numerous recreational activities including picnicking, rock hunting, hiking, camping, horseback riding, mountain biking, sightseeing, cookouts, hunting, motorcycle riding, organized activities such as "Senior Sneak Week," Easter weekend "egg hunts," athletic events[,] and sunbathing. This usage of the West Stansbury Road included the use of automobiles, campers, trailers, motorcycles, all-terrain vehicles, bicy-

cles, horses[,] and other similar items.

23. The vast majority of the general public, who participated in the many recreational activities from use of the West Stansbury Road, did not seek permission from anyone to use the West Stansbury Road, nor were they asked to leave the West Stansbury Road.

24. The general public who participated in the many recreational activities used not only the West Stansbury Road, but used surrounding areas off of the West Stansbury Road on private property, particularly at the northern end of the Island near the Great Salt Lake.

. . . .

26. Some historical private owners of the Island[ ] treated the West Stansbury Road as a public road, and they did not restrict the public's use of the roadway nor did they throw individuals off of the roadway.

"When a party fails to challenge a factual finding and marshal the evidence in support of that finding, we assume[ ] that the record supports the findings of the trial court. . . ." *Heber City Corp. v. Simpson*, 942 P.2d 307, 312 (Utah 1997) (alteration in original) (quotations and citations omitted).

¶ 17 The Bleazards also assert that the trial court erred by finding that the West Stansbury Road was not posted with "No Trespassing" signs. We disagree. In the relevant finding, the trial court stated that there was "conflicting testimony" about "whether there were any 'No Trespassing' signs located along the West Stansbury Road." After noting the disputed evidence on that point, the trial court found that "the sign(s) did not prohibit use of the West Stansbury Road, but rather prohibited usage of the private property adjacent thereto." Instead of marshaling the evidence in support of this finding and demonstrating that the evidence is legally insufficient to support it,[6] *see id.*, the Bleazards simply present the

---

6. "In order to challenge a court's factual findings, an appellant must first marshal all the

evidence in support of the finding and then demonstrate that the evidence is legally insufficient to

evidence supporting their position at trial and reargue its weight. That approach misapprehends the role of this court.

> We note that trial courts are accorded wide latitude in determining factual matters. They are in the best position to assess the credibility of the witnesses and to gain a sense of the proceeding as a whole. Where contradictory testimony is offered . . ., the fact finder is free to weigh the conflicting evidence presented and to draw its own conclusions.

*Covey v. Covey,* 2003 UT App 380,¶ 28, 80 P.3d 553 (alteration in original) (quotations and citation omitted), *cert. denied,* 90 P.3d 1041 (Utah 2004). The Bleazards' argument "is nothing but an attempt to have this court substitute its judgment for that of the trial court on a contested factual issue. This we cannot do under Utah Rule of Civil Procedure 52(a)." *Id.* (quotations and citation omitted); *see also ProMax Dev. Corp. v. Mattson,* 943 P.2d 247, 255 (Utah Ct.App. 1997) ("To succeed in its challenge to findings of fact, [the appellant] may not simply reargue its position based on selective excerpts of evidence presented to the trial court."). Instead, we defer to the trial court's findings of fact entered after consideration of the conflicting evidence offered at trial.

¶ 18 For these reasons, we conclude that the trial court did not err by determining that the public's use of the West Stansbury Road was continuous.

## 2. Public Thoroughfare

█ ¶ 19 The Bleazards argue that the trial court erred by determining that the West Stansbury Road was used as a public thoroughfare. In *Heber City Corp. v. Simpson,* the Utah Supreme Court stated that the definition of a public thoroughfare for purposes of Utah Code section 72–5–104(1) includes three general requirements:

"(i) There must be passing or travel, (ii) the use must be by the public,[and] (iii) use by permission does not constitute use as a public thoroughfare." 942 P.2d at 311 (quotations and citation omitted).

¶ 20 The Bleazards contend that all uses of the West Stansbury Road were permissive, and therefore, the definition set forth in *Simpson, see id.,* was not satisfied in this case.[7] The trial court's relevant findings of fact provide:

21. From 1949 until 1993, the general public used the West Stansbury Road and could "come and go" on the road at will and at times as they chose at their convenience.

22. From 1949 until 1993, the general public used the West Stansbury Road for numerous recreational activities including picnicking, rock hunting, hiking, camping, horseback riding, mountain biking, sightseeing, cookouts, hunting, motorcycle riding, organized activities such as "Senior Sneak Week," Easter weekend "egg hunts," athletic events[,] and sunbathing. This usage of the West Stansbury Road included the use of automobiles, campers, trailers, motorcycles, all-terrain vehicles, bicycles, horses[,] and other similar items.

23. The vast majority of the general public, who participated in the many recreational activities from use of the West Stansbury Road, did not seek permission from anyone to use the West Stansbury Road, nor were they asked to leave the West Stansbury Road.

¶ 21 Although the Bleazards disagree with these findings, they again simply present us with the evidence supporting their position at trial—that all uses of the West Stansbury

---

support the finding even when viewing it in a light most favorable to the court below." *Chen v. Stewart,* 2004 UT 82,¶ 76, 100 P.3d 1177 (quotations and citation omitted).

7. As part of this argument, the Bleazards assert that the commercial and governmental uses of the West Stansbury Road referenced in the trial

court's factual findings were permissive uses. Because we conclude that the trial court's determination concerning use of the West Stansbury Road as a public thoroughfare is adequately supported by other findings, it is unnecessary for us to, and we do not, address the findings relating to commercial and governmental uses.

Road were permissive—and reargue the weight of that evidence. As we have already stated, this is an unavailing tactic on appeal. *See Covey,* 2003 UT App 380 at ¶ 28, 80 P.3d 553; *ProMax Dev. Corp.,* 943 P.2d at 255. The record contains sufficient evidence to support the findings of the trial court and we do not disturb them on appeal.[8]

¶ 22 We also agree with the trial court that *Campbell v. Box Elder County,* 962 P.2d 806 (Utah Ct.App.1998), does not, as the Bleazards assert, support a finding of permissive use. In *Campbell,* portions of a road were located on the plaintiffs' property. *See id.* at 807. At all relevant times, there was a gate where the road turned off the main county road and onto the plaintiffs' property. *See id.* This gate was generally locked, but the plaintiffs customarily opened the gate during October so that deer hunters could cross their property to access government property. *See id.* In affirming the trial court's conclusion that the road had not been used as a public thoroughfare because it was used with the plaintiffs' permission, the *Campbell* court stated:

> The trial court based this conclusion on testimony at the hearing that the [plaintiffs] had unlocked the gate every year except 1994 for deer hunting season and had relocked it at the end of each hunting season. The trial court correctly concluded that permissive use of [the road] could not result in dedication as a public thoroughfare.

*Id.* at 809.

¶ 23 The *Campbell* court relied upon the plaintiffs' overt act of locking and unlocking their gate in reaching the conclusion that the uses of the road were permissive. The Bleazards attempt to minimize the significance of the gate in *Campbell* by stating that "the opening of the gate is significant only because it evidences the permissive nature of the public use." We disagree. The trial court properly relied upon *Campbell* for the proposition that an overt act, such as locking and unlocking a gate, provides evidence of permissive use. The trial court's undis-

turbed findings indicate that the Bleazards did not take similar action with regard to the West Stansbury Road. It was only after Ordinance 93–9 was passed that the Bleazards attempted to install a locked gate. Prior to that time, use of the West Stansbury Road was unobstructed and required neither the knowledge nor the permission of the Bleazards. Therefore, the absence of an overt act by the Bleazards granting permission, even if only temporarily, distinguishes the present case from *Campbell* and is evidence that the use of the West Stansbury Road was not permissive.

¶ 24 The Bleazards also argue that allowing evidence of recreational use of the West Stansbury Road to support the trial court's conclusion that it was used as a public thoroughfare is inconsistent with Utah Code sections 57–14–1 through 57–14–7. *See* Utah Code Ann. §§ 57–14–1 to –7 (2000). The purpose of these provisions "is to encourage public and private owners of land to make land and water areas available to the public for recreational purposes by limiting the owners' liability toward persons entering the land and water areas for those purposes." *Id.* § 57–14–1. The Bleazards concede that these provisions are not directly applicable to this case, but assert that it is inconsistent for the State to encourage property owners to provide the public with access to their property, while at the same time allowing for a road on that property to be dedicated to the public. This argument was raised for the first time on appeal, and therefore, the Bleazards have not preserved their right to assert it. *See MacKay v. Hardy,* 973 P.2d 941, 948–49 & n. 11 (Utah 1998) (providing that an appellant is required to demonstrate that issues were preserved in the trial court). Furthermore, we find nothing in sections 57–14–1 through 57–14–7 that would suggest a legislative intent to invalidate the operation of section 72–5–104(1) where, as here, all of the elements of public dedication have been met.

¶ 25 We do not disturb the trial court's relevant findings, and those findings support

---

8. The Bleazards rely upon several authorities to correctly state the proposition that permissive use does not constitute use as a public thorough-
fare. However, the trial court's undisturbed findings indicate that the public's use of the West Stansbury Road was not permissive.

the trial court's determination that the West Stansbury Road was used as a public thoroughfare. Therefore, we conclude that the trial court did not err by making that determination.

### B. Extent of Public Dedication of West Stansbury Road

¶ 26 The Bleazards also argue that even if a portion of the West Stansbury Road is public, the trial court erred by ruling that the portion of the West Stansbury Road north of the Cable Gate Road is a public road by dedication.[9]

¶ 27 The Bleazards challenge the following factual findings that the trial court made in support of its ruling:

42. Until 1993 when the Bleazards installed a locked gate, the public's use of the West Stansbury Road was physically unfettered and included the entire stretch of the road to the gate at the entrance of the MagCorp dike, since the dike was built.

43. The public, commercial enterprises, and government employees had access to and used the West Stansbury Road to the MagCorp gate where a turn-around was available for individuals and the [C]ounty graders. The County graded the road to the turn-around at the MagCorp gate.

44. The public, commercial business[,] and government employees traveled the West Stansbury Road up to and including the turn-around at the very north end of the Island at the MagCorp gate. Access to the Cable Gate Road and northern shore of the Island (southern shore of the Great Salt Lake) was gained by the public near the turn-around and gate.

¶ 28 As a required part of their challenge to these findings, the Bleazards have marshaled the record evidence supporting them. *See Chen v. Stewart*, 2004 UT 82, ¶ 76, 100 P.3d 1177. However, in doing so, they admit that there is competent evidence in support of the findings. The Bleazards make much of the fact that the State produced only a few witnesses who testified about the public's use of that portion of the West Stansbury Road as compared with the numerous affidavits offered in opposition. This numerical disparity, however, is not sufficient to demonstrate that the trial court's findings are clearly erroneous. On a factual issue such as this, where contradictory testimony and evidence were offered at trial, the number of witnesses or the amount of evidence presented by a party is not necessarily determinative of the trial court's resolution of the issue. *See Holbrook Co. v. Adams*, 542 P.2d 191, 193 (Utah 1975) (stating "the elemental rule that the fact trier may believe one witness as against many, or many against one"); *State v. Reed*, 839 P.2d 878, 880 (Utah Ct.App. 1992) (holding that the trial court did not err in finding the victim's testimony credible and rejecting contrary testimony of the defendant and another witness); *see also Murphy v. Sowders*, 801 F.2d 205, 210 (6th Cir.1986) (recognizing "the time-honored precedent which instructs the trier of fact that the test to be applied in determining the guilt of an accused in a criminal action is not which side produces the greater number of witnesses or presents the greater quantity of evidence; but rather which witness, and which evidence, in the mind of the factfinder, is the most accurate, trustworthy, and generally most credible"); 7 John Henry Wigmore, *Evidence in Trials at Common Law* § 2034 (James H. Chadbourn rev. 1978 & Supp. 2005–2) (providing that credibility does not depend on number of witnesses).

¶ 29 Furthermore, the Bleazards have not "demonstrated that the evidence is legally insufficient to support the finding[s] even when viewing it in a light most favorable to the court below." *Chen*, 2004 UT 82 at ¶ 76, 100 P.3d 1177 (quotations and citation omitted). We again decline the Bleazards' invitation to substitute our judgment for that of the trial court in weighing the significance of the conflicting evidence. *See Covey v. Covey*, 2003 UT App 380, ¶ 28, 80 P.3d 553, *cert. denied*, 90 P.3d 1041 (Utah 2004); *ProMax*

---

9. This portion of the West Stansbury Road is located on a parcel owned by Magnesium Corporation of America (MagCorp) and extends to a MagCorp-owned dike on the northern end of the Island.

*Dev. Corp. v. Mattson,* 943 P.2d 247, 255 (Utah Ct.App.1997).

¶ 30 The Bleazards also assert that, as a matter of law, the portion of the West Stansbury Road beyond the Cable Gate Road could not become a public road by dedication. The Bleazards contend that the ten-year period under section 72–5–104(1), *see* Utah Code Ann. § 72–5–104(1), was not satisfied for that portion of the West Stansbury Road because MagCorp did not receive title to its parcel from the State until it completed its purchase of the parcel under a twenty-year installment contract in 1988. Because section 72–5–104(1) is ineffective against the State and the Bleazards closed the West Stansbury Road in 1993, they argue that the ten-year period of public use required by the statute could not have been met. Despite the Bleazards' assertions to the contrary, there is simply no evidence in the record to support this argument.

¶ 31 First, the Bleazards claim that "[b]ased on the uncontr[o]verted evidence of record, ... MagCorp's predecessor in interest purchased [MagCorp's parcel] on a twenty[-]year installment contract." However, in the portion of the record the Bleazards cite, there is only one reference to a twenty-year installment contract, and that reference does not establish that such a contract existed. The Bleazards' counsel asked a witness, who was a MagCorp employee, "[Y]ou purchased [MagCorp's parcel] from the [S]tate of Utah, correct?" The witness responded, "That's correct." The Bleazards' counsel then asked, "Under a [twenty]-year contract[?]" The witness responded, "I don't know the detail." This does not, as the Bleazards contend, establish that MagCorp's parcel was purchased under a twenty-year installment contract.[10]

¶ 32 Second, in the addendum to their brief, the Bleazards included a copy of the patent executed by the State of Utah granting MagCorp's parcel to MagCorp's predecessor in interest. That document, however, does not appear to have been part of the trial record. The Bleazards have failed to cite to, and we were unable to find, this document in the record before us. Therefore, we do not consider it. *See Lovendahl v. Jordan Sch. Dist.,* 2002 UT 130, ¶ 51, 63 P.3d 705 (stating that an appellate court "will not consider evidence not made part of the record on appeal"); *see also* Utah R.App. P. 24(a)(9) (providing that the argument section of an appellate brief "shall contain ... citations to the ... parts of the record relied on"). Consequently, there is no evidence in the record from which the trial court could have found that title to MagCorp's parcel was actually held by the State of Utah until 1988. Thus, the trial court properly rejected the argument that public dedication was unavailable as a matter of law.

### C. Pass and Cable Roads

¶ 33 In its cross-appeal, the State argues that the trial court erred by failing to hold that the Pass and Cable Roads are public roads by dedication.

¶ 34 The State asserts that the trial court erroneously added two determinative elements to the test under section 72–5–104(1) when it concluded that the Pass and Cable Roads are not public roads by dedication. *See* Utah Code Ann. § 72–5–104(1); *Heber City Corp. v. Simpson,* 942 P.2d 307, 310 (Utah 1997) (providing the three required elements under section 72–5–104(1)). The State contends that the trial court's ultimate conclusion that the Pass and Cable Roads have not been dedicated to the public was based upon two differences between those roads and the West Stansbury Road that are irrelevant under the statute: (1) that the owners of the land adjacent to the Pass and Cable Roads differentiated between them and the West Stansbury Road, regarded them (as well as the land adjacent to them) to be private, and asked members of the public to leave them; and (2) that the Pass and Cable Roads were not designated as roads of the County and were not main-

---

**10.** The Bleazards also cite to portions of their counsel's closing argument wherein he argues that such a contract existed, but argument of counsel is not evidence. *See State v. Worthen,* 765 P.2d 839, 852 (Utah 1988) (Howe, J., concurring and dissenting); *State v. Larsen,* 2005 UT App 201, ¶ 8, 113 P.3d 998.

tained by the County. We disagree with the State's characterization of the trial court's treatment of these factual distinctions.

¶ 35 Although the trial court may have considered these facts in its ultimate conclusion that the Pass and Cable Roads have not been dedicated to the public under section 72–5–104(1), we see nothing in the trial court's analysis indicating that it elevated these differences to the level of "determinative elements" under section 72–5–104(1). Rather, the trial court considered these factual distinctions in reaching its conclusion that the State failed to meet its burden of establishing each of the three required elements under section 72–5–104. We find nothing improper in the trial court's weighing of these facts, along with the other evidence presented, in reaching its findings and conclusions.

¶ 36 The State also argues that it presented sufficient evidence to satisfy the elements of 72–5–104(1) for the Pass and Cable Roads. See Utah Code Ann. § 72–5–104(1); Simpson, 942 P.2d at 310 (providing the three required elements under section 72–5–104(1)). "[B]ecause 'the law does not lightly allow the transfer of property from private to public use,' the [State] bears the burden of proving dedication to the public by 'clear and convincing evidence.' " Campbell v. Box Elder County, 962 P.2d 806, 808 (Utah Ct.App.1998) (quoting Draper City v. Estate of Bernardo, 888 P.2d 1097, 1099 (Utah 1995)). Further, as we have previously stated, we grant the trial court significant discretion in its application of the facts to section 72–5–104(1). See Simpson, 942 P.2d at 310.

¶ 37 Previously, we addressed the Bleazards' challenge to several of the trial court's factual findings. In addressing that challenge, we noted that throughout its written

decision the trial court continually drew the distinction between the public's use of the West Stansbury Road and the public's use of the private property adjoining the West Stansbury Road. The trial court's written decision indicates that it included the Pass and Cable Roads in the latter part of that distinction—i.e., the public's use of the private property adjoining the West Stansbury Road. In doing so, the trial court found that the Bleazards treated the public's use of the Pass and Cable Roads in the same way as they treated the public's use of their private property adjoining the West Stansbury Road—namely, as trespassing. Indeed, the trial court specifically found that

> [t]he owners,[11] while not erecting barriers to access, erected "No Trespassing" signs to prohibit usage of the property adjoining the West Stansbury Road, including [the Pass and Cable Roads]. The public was routinely asked by the owners to leave property other than the West Stansbury Road, including [the Pass and Cable Roads] and the adjoining property, through the forty-five year time frame involved herein....

(Emphasis added.)[12]

¶ 38 The State attempts to characterize this distinction as relating to only the property owners' intent concerning public dedication of the Pass and Cable Roads. We agree that the Bleazards' intent concerning the two roads is not controlling on the issue of public dedication, see Simpson 942 P.2d at 311 ("We have ... abandoned interpreting into the language of [section 72–5–104(1)] the requirement that the owner must consent to the dedication."); however, we believe the State has misapprehended the effect of the distinction drawn by the trial court. Because the property owners "routinely" asked the public to leave the Pass and Cable Roads, the

11. At oral argument, counsel for the State challenged the trial court's reference to "owners" of property asking the public to leave. Counsel admitted, however, that there was evidence in the record indicating that the owners' lessee (or lessees) asked the public to leave the property. We interpret the trial court's use of the term "owners" to include the lessee (or lessees) in question.

12. Although this portion of the trial court's written decision is contained within the section entitled, "Conclusions of Law," it actually contains factual findings. Therefore, we treat the statements as factual findings. See Zions First Nat'l Bank, N.A. v. National Am. Title Ins. Co., 749 P.2d 651, 656 (Utah 1988) ("It is fair to say that a finding of fact that is actually a conclusion of law will be treated as a conclusion of law, and a conclusion of law that is actually a finding of fact will be treated as a finding of fact.").

public was not able to use them " 'as often as they found it convenient or necessary.' " *AW-INC Corp. v. Simonsen,* 2005 UT App 168,- ¶ 11, 112 P.3d 1228 (quoting *Boyer v. Clark,* 7 Utah 2d 395, 326 P.2d 107, 109 (1958)). Accordingly, we agree with the trial court's determination that the continuous use requirement of section 72–5–104(1) was not satisfied for the Pass and Cable Roads.

¶ 39 Although the State challenges the trial court's relevant findings on this issue, it has not "demonstrate[d] that the evidence is legally insufficient to support" the trial court's finding that the public was routinely asked to leave the Pass and Cable Roads, "even when viewing [the evidence] in a light most favorable to the court below." *Chen v. Stewart,* 2004 UT 82,¶ 76, 100 P.3d 1177 (quotations and citation omitted). Instead, the State argues that the weight of the evidence supports its position. We again note that it is not the role of this court to make the determination of which side presented the most persuasive evidence. *See Covey v. Covey,* 2003 UT App 380,¶ 28, 80 P.3d 553, *cert. denied,* 90 P.3d 1041 (Utah 2004); *Pro-Max Dev. Corp. v. Mattson,* 943 P.2d 247, 255 (Utah Ct.App.1997). Furthermore, although the State emphasizes the lack of evidence offered by the Bleazards concerning the Pass and Cable Roads, it was the State's burden to demonstrate to the trial court by clear and convincing evidence that the two roads were dedicated to the public. *See Campbell,* 962 P.2d at 808.

¶ 40 Based upon the foregoing, and given the significant discretion we grant to the trial court in its application of the facts to section 72–5–104(1), *see Simpson,* 942 P.2d at 310, we conclude that the trial court did not err by determining that the West Stansbury Road is a public road by dedication, that the portion of the West Stansbury Road beyond the Cable Gate Road is a public road by dedication, and that the Pass and Cable Roads are not public roads by dedication.

## II. Validity of Ordinance 93–9

¶ 41 The Bleazards argue that the trial court erred by declaring Ordinance 93–9 invalid based upon its interpretation of *State v. Tooele County,* 2002 UT 8, 44 P.3d 680. The

Bleazards also urge us to adopt an actual notice exception to the notice requirement of section 27–12–102.4. *See* Utah Code Ann. § 27–12–102.4 (Supp.1993).

¶ 42 Section 27–12–102.4, as interpreted by the Utah Supreme Court in *Tooele County,* requires "a county intending to vacate its interests in a road [to] send mailed notice to parties that satisfy two conditions, i.e., to parties who are (1) 'owners of record' of land that (2) 'abut[s] the county road proposed to be vacated.' " *Tooele County,* 2002 UT 8 at ¶ 18, 44 P.3d 680 (final alteration in original) (quoting Utah Code Ann. § 27–12–102.4). The *Tooele County* court held that "if the State's property located below the meander line of the Great Salt Lake abuts West Stansbury Road as described in the County's proposed vacation notice and subsequent enactment, then Ordinance 93–9's vacation of the County's interests in the road is null and void." *Id.* at ¶ 24. Because the district court had not determined whether the State's property abuts the West Stansbury Road, the *Tooele County* court remanded to the district court, providing detailed guidance concerning the issues to be decided:

> Specifically, the court shall determine whether the State's land joins, borders, or bounds, with nothing intervening, West Stansbury Road as it is described in the County's proposed vacation notice and subsequent enactment of that proposal.... If the district court determines that the State's land abuts West Stansbury Road as it is described in the County's proposed vacation notice, then the court must grant summary judgment in the State's favor, overturning ... Ordinance 93–9 as null and void. If, conversely, the court determines that the State's land does not abut the [West Stansbury Road], then the court shall enter summary judgment in favor of the County and the Bleazards, allowing Ordinance 93–9 to remain in effect.

*Id.* at ¶ 25 (citations omitted). After remand, the Bleazards and the County conceded that the West Stansbury Road abuts the State's land beyond the meander line of the Great Salt Lake. Therefore, in accordance with

*Tooele County, see id.,* the trial court held that Ordinance 93–9 was invalid.

¶ 43 The Bleazards' challenge to the trial court's interpretation of *Tooele County* depends upon the success of their argument concerning the extent of the public dedication of the West Stansbury Road. Specifically, the Bleazards claim that because the portion of the West Stansbury Road beyond the Cable Gate Road (which portion extends all the way to the meander line of the Great Salt Lake) is not a public road by dedication under section 72–5–104(1), the trial court erred by determining that the State was an owner of land "abutting the county road proposed to be vacated." Utah Code Ann. § 27–12–102.4. However, as previously indicated, we have upheld the trial court's ruling that the portion of the West Stansbury Road beyond the Cable Gate Road is a public road by dedication pursuant to section 72–5–104(1).

¶ 44 This notwithstanding, the Bleazards contend that the issue of whether the State's land abuts the West Stansbury Road should not be determined according to the description of the West Stansbury Road contained in the County's proposed vacation notice. Instead, the Bleazards argue that this issue should be determined according to the trial court's conclusions concerning which portions of the West Stansbury Road are public roads ·by dedication under section 72–5–104(1). This argument is inherently flawed. The trial court's determinations about which portions of the West Stansbury Road have been dedicated to the public were made as a result of litigation that the State initiated after the County was required to send the notice described in section 27–12–102.4. The plain language of section 27–12–102.4 requires that notice be sent to alert all owners of record of land abutting a county road that the road is *"proposed to be vacated." Id.* § 27–12–102.4 (emphasis added). The result of after-initiated litigation to determine whether the county road in question is dedicated to the public under section 72–5–104(1) is irrelevant to determining who is entitled to notice under section 27–12–102.4. Our reading of *Tooele County* indicates that the Utah Supreme Court agrees. Contrary to the Bleazards' claim that the supreme court's references to the County's proposed vacation notice were dicta, the *Tooele Coun-*

*ty* court explicitly held that the trial court was to determine whether the State's land abuts the West Stansbury Road "as it is described in the County's *proposed vacation notice." Tooele County,* 2002 UT 8 at ¶ 25, 44 P.3d 680 (emphasis added). Moreover, only that interpretation provides abutting landowners an opportunity to be heard on the issue of abandonment. Therefore, we conclude that the trial court correctly interpreted the holding of *Tooele County* and properly declared Ordinance 93–9 invalid.

¶ 45 The Bleazards also urge us to adopt an actual notice exception to the specific notice requirements of section 27–12–102.4. We decline to do so. *See Henderson v. Osguthorpe,* 657 P.2d 1268, 1270 (Utah 1982) (stating that *Ercanbrack v. Judd,* 524 P.2d 595, 597 (Utah 1974), confirmed that a county must adhere to the relevant procedural requirements, including the notice requirements of section 27–12–102.4, for vacation of a county roadway to occur); *Ercanbrack,* 524 P.2d at 597 (holding that vacation "was and is a nullity" because notice was not provided in compliance with section 27–12–102.4); *cf. Greene v. Utah Transit Auth.,* 2001 UT 109,- ¶ 15, 37 P.3d 1156 (interpreting a different statutory notice requirement, but stating that "[i]n the absence of some ambiguity, we will not disturb explicit legislative requirements and read into the statute an actual notice exception").

## CONCLUSION

¶ 46 We conclude that the trial court did not err by determining, pursuant to section 72–5–104(1), that the West Stansbury Road is a public road by dedication, that the portion of the West Stansbury Road beyond the Cable Gate Road is a public road by dedication, and that the Pass and Cable Roads are not public roads by dedication. We also conclude that the trial court properly declared Ordinance 93–9 invalid. Therefore, we affirm the trial court's ruling.

¶ 47 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and JAMES Z. DAVIS, Judge.